Judith GUY, Plaintiff,

v.

The STATE OF ILLINOIS, McHenry County, Edward Foley, G. Terence Nader and Gary Pack, in their individual and official capacities, Defendants.

No. 95 C 6758.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 14, 1997.

Mary Stowell, Linda Debra Friedman, Leng, Stowell, Friedman & Vernon, Chicago, IL, for Judith Guy.

Vanessa Victoria Clohessy, Illinois Attorney General's Office, Chicago, IL, James Thomas Harrison, Harrison Law Offices, P.C., Woodstock, IL, for State of Illinois.

James Thomas Harrison, Harrison Law Offices, P.C., Woodstock, IL, Susan Marie Conner, Chicago, IL, for McHenry County, Edward Foley, G.T. Nader, Gary W. Pack.

## MEMORANDUM OPINION AND ORDER

LEINENWEBER, District Judge.

Plaintiff Judith Guy sued the State of Illinois and McHenry County for sexual harassment, sexual discrimination, and retaliatory discharge in violation of Title VII. Guy further sued Edward Foley, G. Terence Nader, and Gary Pack (collectively, the "individual defendants") for deprivation of her First and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. Pendent to these federal claims, plaintiff brings state law claims of defamation and intentional infliction of emotional distress. Defendants now move to dismiss all claims against them. Additionally, the individual defendants and McHenry County (collectively, the "McHenry defendants") have submitted a motion to cite additional authority in support of their motion to dismiss the state law claims.

## BACKGROUND

Plaintiff previously served as an assistant state's attorney ("ASA") with the McHenry County State's Attorney's Office. At that time, defendant Gary Pack was employed as McHenry County's State's Attorney and defendant G. Terence Nader was plaintiff's supervisor, serving as the Criminal Division Chief of that office. Defendant Edward Foley was employed as an assistant public defender for the McHenry County Public Defender's Office.

Shortly after September 1, 1994, plaintiff was discharged from her position as an ASA. Plaintiff alleges that, while she was working as an ASA, she was subjected to differential treatment based on her gender, as well as sexual harassment. In addition, she alleges that her ultimate discharge stemmed from her complaints regarding this treatment. Subsequent to her dismissal, plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC ultimately issued a right to sue letter, leading to plaintiff's presentation of those claims to this court.

## LEGAL STANDARD

When ruling on a motion to dismiss, federal courts adhere to the familiar standard of viewing the allegations of the complaint in the light most favorable to the plaintiff. Consequently, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th

Cir.1996); *Codest Engineering v. Hyatt Int'l Corp.*, 954 F.Supp. 1224, 1232–33 (N.D.Ill. 1996). The court will only dismiss a complaint for failure to state a claim if no relief could be granted under any set of facts that could be proven consistent with the allegations found in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

### TITLE VII CLAIM

Because plaintiff is uncertain as to which defendant is her "employer" under Title VII, plaintiff asserts her Title VII claims—including claims of sexual harassment, sexual discrimination, and retaliation—against defendant McHenry County or, in the alternative, defendant State of Illinois. Both defendants move to dismiss the claims on the basis that plaintiff is not an employee under the Act, but rather is excluded from protection by 42 U.S.C. § 2000e(f). Section 2000e(f) defines the term "employee" for purposes of Title VII and excepts from its scope certain employees of state-elected officials, including "personal staff," "immediate advisor[s]," and "appointees on the policy making level." 42 U.S.C.A. § 2000e(f)(West 1994).

■ No case within this Circuit has yet decided whether an ASA is excluded from Title VII's protection by § 2000e(f). However, Seventh Circuit precedent makes it clear that, in making this determination, the analysis is the same as that applied in the context of patronage ban exemptions. *Americanos v. Carter*, 74 F.3d 138, 144 (7th Cir.1996)(citing *Heck v. City of Freeport*, 985 F.2d 305, 310 (7th Cir.1993)). In *Americanos*, a former deputy attorney general sued the Attorney General of the State of Indiana, among others, for unlawful discrimination on the bases of national origin under Title VII, political affiliation under 42 U.S.C. § 1983, and age under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* The Court of Appeals affirmed the district court's grant of summary judgment in favor of the attorney general finding that the deputy attorney general's position was such that political loyalty to the attorney general was an appropriate requirement. *Id.* at 142. Although the court's discussion centered specif-

ically around the political discrimination charge, the court affirmed the dismissal of all claims, stating that " 'the reasons for exempting the office from the patronage ban apply with equal force to the requirements of the ADEA [and Title VII].' " *Americanos*, 74 F.3d at 144 (citing *Heck*, 985 F.2d at 310).

In its discussion of the case, the Court of Appeals declared that the relevant inquiry involved an analysis of the "powers inherent in a given office, rather than the actual functions [that] the occupant of that office performed." *Id.* at 141 (quoting *Heck*, 985 F.2d at 309). The court found that, regardless of the work the deputy attorney general actually performed, the position was, at least, authorized to perform "any of the enumerated duties of the [Attorney General]" and was a "public representative of the office." *Id.* Because of this "direct ability to implement the policies and goals of the [Attorney General] ... [the deputy attorney generals'] political loyalty to the AG [was] of the utmost importance" and was an appropriate consideration in employment decisions regarding the deputy attorney generals. *Id.* at 143.

Furthermore, the court analogized the case to that of *Livas v. Petka*, where the Seventh Circuit held that political affiliation was a constitutionally permissible consideration in the hiring or firing of ASAs. 711 F.2d 798, 800–01 (7th Cir.1983); *see also Hernandez v. O'Malley*, 98 F.3d 293, 295–96 (7th Cir.1996)(reiterating holding of *Livas*). In *Livas*, the court based its holding in part on the fact that a prosecutor, such as a State's Attorney, who owes a duty to the public at large, relies on his subordinates, the ASAs, to implement his policies and that an ASA may, "in carrying out his or her duties, make some decisions that will actually create policy." *Livas*, 711 F.2d at 801. As stated recently by the Seventh Circuit, ASAs are "in a large office ... the effective policymakers for broad classes of matters." *Hernandez*, 98 F.3d at 295–96. It is apparent to this court that, based on this precedent, ASAs are "appointees on a policy-making level" under § 2000e(f).

■ Plaintiffs contend that whether an ASA falls within the scope of the "employee"

exemption is a fact-specific issue that cannot be disposed of via a 12(b)(6) motion. Pl.'s Resp. to McHenry Defs.' Mot. to Dismiss at 5. Although this may be true in certain instances, *see Leving v. City of Chicago,* No. 87 C 1077, 1988 WL 20046, at *5–6 (N.D.Ill. Mar.1, 1988) (stating that whether mayor's administrative secretary was exempt from Title VII's coverage was a factual inquiry, not appropriate for a motion to dismiss), where the duties of the position in question are a matter of "common knowledge," a court can make a determination in the context of a motion to dismiss. *Americanos,* 74 F.3d at 141. Based on state statutory and relevant case law, the duties of an ASA fall within the category of "common knowledge."

## GOVERNMENT EMPLOYEE RIGHTS ACT OF 1991

Plaintiff contends that, even if she is an exempt under Title VII, she is covered by the Government Employee Rights Act of 1991 ("GERA"), 2 U.S.C.A. § 1201 *et seq.* (West Supp.1996). As part of the Civil Rights Act of 1991, Congress enacted the GERA, which "provide[s] procedures to protect the rights of certain government employees, with respect to their public employment, to be free of discrimination on the basis of race, color, religion, sex, national origin, age, or disability." *Id.* Although few cases have interpreted or discussed the GERA to date, Section 1220 of the GERA, entitled "Coverage of previously exempt State employees," apparently provides relief to those individuals who were previously exempt from the definition of "employee" under Title VII by § 2000e(f).

■ However, in order for this court to have jurisdiction to hear a GERA claim, plaintiff must comply with the administrative procedures set forth in the Act. Under the GERA, the administrative procedures are quite different than those delineated under Title VII. Under the GERA, once a proper complaint has been filed with the EEOC, the Commission must determine whether a violation has occurred and issue a final order in accordance with the procedures set forth in the Administrative Procedure Act, 5 U.S.C. §§ 554–57. 2 U.S.C. § 1220(b)(1). At that point, "any party aggrieved by a final order" can obtain judicial review pursuant to 28 U.S.C. § 158. 2 U.S.C. § 1220(c). Consequently, the charging party must "await a determination by [the EEOC] prior to initiating legal action." *McNulty v. New York City Dep't of Finance,* 941 F.Supp. 452, 457 (S.D.N.Y.1996). Although plaintiffs may seek review in the federal district court once the EEOC has made a determination, *de novo* review is unavailable. *Id.*

In the present case, plaintiff submitted a timely EEOC charge that alleged violations of Title VII, and not the GERA. At the EEOC hearing, plaintiff's exemption from § 2000(e) protection and possible coverage under the GERA were not discussed. Plaintiff argues that because defendants did not raise the argument at that point, the district court should deem it waived. In the alternative, plaintiff asks this court to send the case back to the EEOC and compel the Commission to initiate administrative procedures.

■ The court disagrees that defendants have waived their arguments by not addressing them in front of the EEOC. Since the proceeding before the EEOC was far from a full adversarial proceeding, defendant's legal arguments, although not raised at that point, are not waived for purposes of federal court review. See *Garvey v. Dickinson College,* 761 F.Supp. 1175, 1181 (M.D.Pa.1991)(finding that defendant's failure to raise late-filing defense at agency proceeding did not result in waiver because administrative proceedings were non-adversarial in nature).

■ As for plaintiff's request that the court order the EEOC to hear the present case, the court finds this route equally untenable. The court is without jurisdiction to remand the case to the EEOC at this juncture. Under the GERA, the federal district court only has jurisdiction to review administrative determinations once the issues have been hashed out at the administrative level. Plaintiff's argument that the EEOC should open its doors to plaintiff's GERA claim is more properly addressed to the agency itself. Since the EEOC has not issued an order pursuant to the procedures set forth in the GERA, this court lacks jurisdiction to hear

plaintiff's GERA claims or compel the EEOC to do the same. Consequently, plaintiff's Title VII claims against all defendants are dismissed without prejudice to their refiling after proper administrative proceedings.

## § 1983 CLAIMS

Plaintiff asserts that defendants Foley, Nader and Pack, in their individual capacities, violated the Equal Protection Clause by discriminating against plaintiff based on her sex and conspiring to deprive plaintiff of her equal protection rights, and violated the First Amendment by retaliating against plaintiff for speaking out on matters of public concern. The court will address each alleged violation in turn.

### Equal Protection Claim

To state a claim for an equal protection violation under § 1983, plaintiff must show that defendants *purposefully* discriminated against her because of her membership in a particular class. *Forrester v. White*, 846 F.2d 29, 32 (7th Cir.1988). To demonstrate a prima facie case of sex discrimination under the equal protection clause—short of direct evidence of discrimination—plaintiff must demonstrate that she (1) is a member of a protected class; (2) was similarly situated to members of an unprotected class and (3) was treated differently from those similarly-situated individuals. *Johnson v. City of Fort Wayne*, 91 F.3d 922, 944–45 (7th Cir.1996). In addition, she must demonstrate that defendants acted with discriminatory intent. *Id.* at 945.

 Furthermore, sexual harassment—of the quid pro quo or hostile work environment variety—can be the basis of an Equal Protection claim as long as such harassment rises to the level of intentional sex discrimination. *Bohen v. City of East Chicago*, 799 F.2d 1180, 1185–87 (7th Cir. 1986). For example, to proceed under Section 1983 based on a hostile work environment theory, a plaintiff must demonstrate that defendants not only created a "hostile work environment," as required under Title

VII, but also that they intended to harass plaintiff because of her gender. *Howard v. Board of Ed. of Sycamore Comm. Unit School Dist. No. 427*, 876 F.Supp. 959, 969 (N.D.Ill.1995). Thus, plaintiff's burden under § 1983 exceeds that under Title VII in that plaintiff must demonstrate that defendants harbored a discriminatory purpose. *Mann v. Montgomery*, No. 84 C 11020, 1994 WL 383905, at *5 (N.D.Ill. July 19, 1994). Finally, in a § 1983 action, "[i]ndividual liability . . . can only be based on a finding that the defendant caused the deprivation at issue. . . . [T]he plaintiff must establish that the defendant was personally involved or acquiesced in the alleged constitutional violation." *Kelly v. Mun. Courts of Marion County, Ind.*, 97 F.3d 902, 909 (7th Cir.1996); *see also, Oliver v. Hinton*, No. 95 C 4651, 1996 WL 99901, at *5 (N.D.Ill. Feb.29, 1996) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995)).

Even under the liberal federal pleading rules, many of plaintiff's allegations are deficient. For example, plaintiff sets forth a number of ways in which she was treated differently from male employees, without alleging that these male employees were similarly-situated to her. Compl. ¶ 12. The only allegation that refers to similarly-situated male employees is plaintiff's allegation that she was denied a pay increase that similarly-situated males received. In addition, most of the allegations of differential treatment are generally asserted, failing to mention a defendant specifically by name,[1] and thereby lacking the element of personal involvement necessary for individual liability under § 1983.

 Plaintiff does, however, set forth more particular and complete allegations. For example, on one occasion, defendant Pack told plaintiff that "she was not any fun because she didn't drink and didn't fool around." When plaintiff inquired as to "what that had to do with her work," Pack replied "it remained to be seen how it affected her job." Compl. ¶ 10. On another occasion,

---

1. The only allegation to mention any of the defendants states that "Guy was excluded from social or business gatherings, especially those arranged and hosted by Gary Pack." This allega-

tion fails to indicate whether this treatment was different from that of similarly-situated male employees or whether defendant Pack was personally involved in such exclusions.

defendant Nader allegedly touched plaintiff "inappropriately" while at lunch. Compl. ¶ 10(a). Also, she was allegedly "subjected to offensive remarks, sexual stereotyping, and intimidating behavior on the part of her superiors." Compl. ¶ 10. After plaintiff complained in writing to defendant Pack regarding the alleged harassment and discriminatory conduct, including her failure to receive a pay increase commensurate with that of similarly-situated males, Pack called her to a meeting, at which defendant Nader and legal counsel were also present, in order to "discuss the contents of her letter." Compl. ¶ 15. At that meeting, plaintiff was accused of attempting to extort the State's Attorney's office and was told that from then on, "everything" about her work performance would be "documented." Compl. ¶ 15. "Shortly" after this meeting, plaintiff was terminated on pretextual grounds. Compl. ¶ 16.

While the above allegations of sexual harassment alone may not rise to the level of a "hostile work environment," they provide sufficient notice to defendants of plaintiff's claim. Plaintiff alleges that, among other things, defendant Nader made unwelcome physical contact with her. In addition, defendant Pack's one-time statement, because of its content, may be sufficient to demonstrate quid pro quo harassment if plaintiff can link the statement to adverse employment action. *Ton v. Information Resources, Inc.*, No. 95 C 3565, 1996 WL 5322, at *7 (N.D.Ill. Jan.3, 1996). Furthermore, plaintiff's allegations indicate that defendants Pack and Nader may have condoned discriminatory conduct, including the payment of lower wages to plaintiff than to similarly-situated male employees. Although plaintiff asserts that defendant Pack "exercised only a minimal amount of control over her position, if any," compl. ¶ 8, Pack's position in the office, and the fact that plaintiff complained about her problems to Pack, indicate that he had decision-making power over her employment status. Finally, plaintiff states that the actions of the individual defendants were motivated by their desire to deprive her of her equal protection rights, in particular her right to be free from discrimination on the basis of her gender—sufficient allegations to support the intent requirement. Compl.

¶ 20. Viewing all inferences in the light most favorable to her, plaintiff has stated a claim against defendants Pack and Nader for violation of her equal protection rights under § 1983.

## Conspiracy

■■■ In addition, plaintiff's alleges that defendants Pack, Nader and Foley conspired to deprive her of her constitutional rights in violation of § 1983. To sufficiently plead conspiracy under § 1983, plaintiff must demonstrate "(1) an express or implied agreement among defendants to deprive plaintiff of secured constitutional rights and (2) an actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Fantasia v. Kinsella*, No. 96 C 1537, 1997 WL 18430, at *6 (N.D.Ill. Jan.16, 1997). Plaintiff's allegations must raise an inference of a mutual understanding and "acts performed together by the members of the conspiracy are adequate when they are unlikely to have been undertaken without an agreement." *Kunik v. Racine County, Wis.*, 946 F.2d 1574, 1580 (7th Cir.1991).

Plaintiff asserts that defendants Pack, Nader and Foley agreed and conspired to deprive her of her equal protection rights and that, in furtherance of this scheme, they "manufactur[ed] false accusations against Plaintiff." Plaintiff further alleges that "[t]hese false accusations were intended to provide a basis for terminating Plaintiff after she complained of sexual harassment and sexual discrimination" and that "[f]ollowing these actions by Defendants, Plaintiff was terminated on pretextual grounds." Compl. ¶ 19. Finally, plaintiff alleges that "[t]hese actions, and others performed by the individual defendants, were all motivated by their desire to deprive Plaintiff of her equal protection rights, including the right to not be discriminated against on the basis of gender." Compl. ¶ 20.

■■■ Viewing all allegations in the light most favorable to her, plaintiff has succeeded in stating a claim for conspiracy under § 1983 against defendants Pack and Nader. Plaintiff's allegations of the conspiracy itself are somewhat conclusory, stating that defendants Pack, Nader, and Foley "understood

the general objectives of the scheme, accepted them, and agreed to do their part to further them." Compl. ¶ 18. However, based on the totality of her allegations, particularly the meeting where defendants Pack and Nader were present, the requisite "whiff of the alleged conspirator's assent" is apparent. *Burns v. Cineplex Odeon, Inc.*, No. 95 C 5280, 1996 WL 501742, at *8 (N.D.Ill. Sept.3, 1996). In addition, although the link between defendants' overt act and plaintiff's deprivation is not fully established, the court can reasonably infer from her allegations that defendants caused her termination.

[16–18] Defendant Foley contends that, even if a conspiracy is properly alleged, he escapes liability because he is a public defender, and thereby not a state actor. Although state action is required for liability under Section 1983, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 149, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970), defendant Foley can be captured by the net of conspiracy. Essentially, a private party can be liable under § 1983 if "state officials and the private party somehow reached an understanding to deny the plaintiff[ ][her] constitutional rights." *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir.1985); *see also Adickes*, 398 U.S. at 152, 90 S.Ct. at 1605. In such a situation, the state official's involvement provides the requisite "state action" for purposes of § 1983. *Moore*, 754 F.2d at 1352. Nevertheless, the allegations of the complaint in this case are insufficient to include defendant Foley within this conspiracy net. "A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir.1992). The complaint is devoid of any non-conclusory, factual allegations that indicate defendant Foley's assent to the alleged "scheme." Consequently, the conspiracy claim against defendant Foley fails.

▬ Although the court finds that plaintiff's conspiracy claim passes muster at this stage of the proceedings, it stands on somewhat shaky ground. It is not clear to the court that defendants' "scheme" was aimed at sex discrimination. Was plaintiff allegedly discharged because of her gender? Or, was she discharged in retaliation for her complaints regarding discriminatory treatment? Both ideas run concurrently through plaintiff's complaint. Yet, the latter alone does not give rise to an equal protection violation. The equal protection clause does not grant a general right against retaliation. *See Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 100 F.3d 1287, 1295–96 (7th Cir.1996); *Gray v. Lacke*, 885 F.2d 399, 413–14 (7th Cir.1989) ("[Plaintiff's] right to be free from retaliation for protesting sexual harassment and sex discrimination is a right created by Title VII, not the equal protection clause"); *Yatvin v. Metro. Sch. Dist.*, 840 F.2d 412, 418 (7th Cir.1988). If plaintiff was retaliated against because of her gender, plaintiff's allegations may support a finding of sex discrimination. Viewing the allegations in plaintiff's favor, her complaint survives dismissal.

### First Amendment Claim

Plaintiff alleges that defendants violated her First Amendment rights by retaliating against her for complaining about sexual harassment and discrimination. More specifically, plaintiff alleges that her EEOC charge and the present complaint raise matters of public concern and that defendants committed acts of defamation against her in retaliation for this protected expression.

The parties belabor the issue of whether plaintiff's expression in this case involves a matter of public concern. This arises from the fact that, in the case of public employees, "[b]efore speech will be protected, it must address a matter of public concern." *Cliff v. Board of Sch. Commissioners of the City of Indianapolis, Ind.*, 42 F.3d 403, 409 (7th Cir.1994). However, the court identifies an even more basic element of plaintiff's claim subject to debate—whether the alleged defamation is sufficient state action to serve as the basis for plaintiff's First Amendment claim.

▬ As stated by the Ninth Circuit, the "right of public employees to speak on matters of public concern, . . . is an outgrowth of the constitutional tenet that public

officials may not deny or deprive a person of a governmental benefit or privilege on a basis that infringes her or his freedom of speech." *Hyland v. Wonder,* 972 F.2d 1129, 1134 (9th Cir.1992). In making this assertion, *Hyland* acknowledged that the government benefit or privilege in question need not be public employment. *Id.* at 1135.

> The injury to position or privilege necessary to activate the First Amendment.. need not rise to the level of lost employment. Retaliatory actions with less momentous consequences, such as loss of a volunteer position, are equally egregious in the eyes of the Constitution because a person is being punished for engaging in protected speech.

*Id.* However, defamation alone, the only retaliation alleged in this case, may not be sufficient in the absence of other government action. *Gini v. Las Vegas Metro. Police Dep't,* 40 F.3d 1041, 1045 (9th Cir.1994); *Sudeikis v. Chicago Transit Auth.,* 774 F.2d 766, 770 (7th Cir.1985); *but see Duckworth v. Ford,* 995 F.2d 858, 859 (8th Cir.1993)(reviewing district court's denial of qualified immunity and summarily approving district court's finding that defamation alone was sufficient if in retaliation for protected expression). As stated in *Gini,*

> "the constricture of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that damage to reputation is not actionable under § 1983 unless it is accompanied by some more tangible interests," cannot be avoided by alleging that defamation by a public official occurred in retaliation for the exercise of a First Amendment right.

40 F.3d at 1045.

■ The Seventh Circuit has acknowledged in *dicta* that, although defamation "is not actionable as such under the Constitution, ... it is actionable when used by public officials to punish a person for expressing her views." *Smart v. Bd. of Trustees of the Univ. of Ill.,* 34 F.3d 432, 434–35 (7th Cir.1994)(holding that malicious prosecution by defendants in retaliation for criticism of public official was form of harassment forbidden on first amendment grounds). In such a situation, there may be a deprivation of an individual's liberty interest in free speech. Whether or not the conduct in this case rose to the level of an actionable deprivation of first amendment rights, however, is of no consequence, for the court finds that defendants Pack and Nader are protected by qualified immunity as to this basis for plaintiff's claim. As is apparent from the above discussion, in 1994—in fact, even now—it was not "clearly established" that defamation alone could provide the basis for a violation of plaintiff's first amendment rights in light of *Paul v. Davis.*

### Fourteenth Amendment

■ Plaintiff alleges that some defamation occurred prior to her "protected speech." However, plaintiff fails to state a claim for the deprivation of any other property or liberty interest based on this alleged defamation. As the court has intimated above, defamation by a state officer is not a constitutional tort in and of itself. *See Buckley v. Fitzsimmons,* 20 F.3d 789, 797 (7th Cir.1994). To rise to constitutional dimensions, the defamation must not only cause plaintiff a reputational injury, but also the deprivation of a liberty or property interest. *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Siegert v. Gilley,* 500 U.S. 226, 233–34 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) (defamation by state actor not sufficient to state § 1983 claim because not "incident" to plaintiff's termination in that plaintiff voluntarily resigned); *Sudeikis v. Chicago Transit Authority,* 774 F.2d 766, 769 (7th Cir.1985); *Lawson v. Sheriff of Tippecanoe County, Ind.,* 725 F.2d 1136, 1138–39 (7th Cir.1984); *Hackler v. Vesta,* No. 95 C 50339, 1996 WL 684439, at *8 (N.D.Ill. Nov.21, 1996).

■ Although plaintiff states that some defamatory remarks occurred around the time of her termination, compl. ¶ 25, she fails to allege a sufficient deprivation of a property or liberty interest in violation of the fourteenth amendment. Plaintiff makes no allegation that she had a "property interest" in her employment as an ASA. See *McGrath v. Gillis,* 44 F.3d 567, 570 (7th Cir.1995)(holding that plaintiff, an assistant state's attorney, failed to show entitlement to continued

employment at summary judgment stage). Even without a property interest in her employment, however, plaintiff could still state a claim for deprivation of a liberty interest if she can demonstrate that she was "fired for a publicly announced reason that impugned her moral character," causing her to be excluded from a trade or profession. *Lawson*, 725 F.2d at 1138. In such a case, the termination (even if not a deprivation of a property interest in and of itself) in conjunction with the defamatory remarks can work to deprive a plaintiff of a liberty interest. Plaintiff alleges here that the defamatory remarks "accused [her] of want of ability in her profession." Compl. ¶ 27. Plaintiff, however, makes no allegations that the defamatory remarks implicated her moral character. Furthermore, while plaintiff states that the defamation caused her "loss of economic opportunities" as well as harm to her reputation, compl. ¶ 26, "[o]nly those government actions which make an employee 'all but unemployable,' are actionable under the Fourteenth Amendment." *Mann v. City of Chicago*, No. 84 C 11020, 1986 WL 8032, at *4 (N.D.Ill. July 14, 1986) (citations omitted). Therefore, plaintiff's complaint fails to state a claim that the defamation deprived her of her fourteenth amendment rights.

### QUALIFIED IMMUNITY

Defendants Pack and Nader contend that dismissal of plaintiff's § 1983 claim against them is warranted on the basis that they are entitled to qualified immunity. Defendants argue specifically that, at the time of their alleged conduct, it was not "clearly established" (1) that their conduct amounted to sexual harassment or discrimination, or (2) that plaintiff's speech involved a matter of public concern.

▮▮▮▮ The determination of whether defendants are entitled to qualified immunity often involves factual issues regarding defendants' conduct, and therefore, "it is rarely appropriate to address the question of qualified immunity on a Rule 12(b)(6) motion to dismiss unless the plaintiff failed to allege the violation of a clearly established constitutional right." *Nyberg v. Puisis*, No. 93 C 6602, 1996 WL 754107, at *3 n. 5 (N.D.Ill.

Dec.31, 1996)(citing *Hall v. Ryan*, 957 F.2d 402, 404 (7th Cir.1992) and *Milazzo v. O'Connell*, 925 F.Supp. 1331, 1346–47 (N.D.Ill. 1996)). At this stage of the litigation, defendants cannot escape liability as to plaintiff's equal protection claim based on a qualified immunity defense. In 1994, it was clearly established that a state actor's sexual harassing and discriminatory conduct could provide the basis for a violation of equal protection rights under 42 U.S.C. § 1983. *See, e.g., Bohen*, 799 F.2d at 1185. At this point, under the liberal federal pleading rules, plaintiff has sufficiently pled such a violation. Defendants Pack and Nader cannot escape further scrutiny of their conduct by asserting the defense of qualified immunity. Certainly, they may assert this defense again at later stage of the proceedings.

However, as already discussed above, defendants Pack and Nader can escape potential liability as to plaintiff's first amendment claim, even though plaintiff may have stated a claim for such a violation. Even under current law, it is not "clearly established" that defamation alone is sufficient state action to cause a deprivation of a first amendment right under the circumstances of this case.

### STATE LAW CLAIMS

#### Libel Per Se

▮▮▮▮ Plaintiff asserts a claim of libel per se against the individual defendants. Defendants argue that plaintiff has failed to state her defamation claim with sufficient particularity to withstand a motion to dismiss. In this district, courts have found that the federal pleading rules do not require a complaint to set forth the exact words, verbatim, of the alleged defamation. *See, e.g., Chisholm v. Foothill Capital Corp.*, 940 F.Supp. 1273, 1285 (N.D.Ill.1996); *Pelech v. Klaff–Joss, L.P.*, 828 F.Supp. 525, 534 (N.D.Ill.1993). Nevertheless, the basic substance of the statements must be alleged so that defendants can form their responsive pleadings. *Chisholm*, 940 F.Supp. at 1285. Plaintiff argues that her allegations put defendants on notice of her claim and are thus

sufficient to withstand defendant's motion to dismiss.

The court finds plaintiff to have the better of the argument. Plaintiff's allegations state that defendants Foley, Pack and Nader "defamed" Guy by making "false comments to others, including her former co-workers, concerning her termination and the events leading to it." Compl. ¶ 25. According to the allegations, these defendants "further embarked on a campaign to destroy Plaintiff's reputation" by "publicly defam[ing] plaintiff" and "issu[ing] false press releases.... These false statements and comments accused Guy of want of ability in her profession." Compl. ¶¶ 26–27. These allegations, albeit not as precise as they could have been, sufficiently allege the substance of defendants' statements. Based on the complaint, the allegedly "false" statements apparently accused plaintiff of professional incompetence and indicated that she was terminated on that basis. Plaintiff has further indicated who made the statements in question and to whom they were made. Remaining detail can be elicited through discovery. *See Chisholm*, 940 F.Supp. at 1284 (statement made by particular defendant that plaintiff had been fired for "double dealing" was sufficient to set forth substance of defendants' statements).

### Intentional Infliction of Emotional Distress

Plaintiff asserts a claim of intentional infliction of emotional distress against all defendants but the State of Illinois. Defendants contend that the claim fails first, for want of allegations demonstrating extreme and outrageous conduct, and second, because it is preempted by the Illinois Human Rights Act.

█ Under Illinois law, the Illinois Human Rights Act ("IHRA") preempts state law tort claims if the underlying facts are "inextricably linked" to civil rights violations listed in the IHRA. *Austin v. Lodging Unltd., Inc.*, No. 94 C 5279, 1996 WL 563456, at *12 (N.D.Ill. Sept.12, 1996). Thus, Illinois state courts (and federal courts sitting in their stead) lack jurisdiction over such claims, which proceed instead in front of the Illinois Human Rights Commission. Recently, the Illinois appellate court discussed the panoply of district court cases on the subject and found that intentional torts, such as infliction of emotional distress, are preempted by the IHRA where the underlying facts which support them are the same facts as underly a plaintiff's sexual harassment claims. *Maksimovic v. Tsogalis*, 668 N.E.2d 166, 172–73, 282 Ill.App.3d 576, 585–86, 218 Ill.Dec. 3, 9–10 (Ill.App.Ct.1996).

█ In the present case, plaintiff tries to distinguish her case from that of *Maksimovic* by stating that her intentional infliction of emotional distress claim is based on much more than "offensive touching." Plaintiff points to her allegations of retaliatory conduct and "a conspiracy between the individual defendants involving concocting false accusations against her and embarking on a campaign of defamation intended to destroy her reputation...." She states that "these allegations readily stand apart from her allegations of offensive touching." Pl.'s Resp. Br. at 3.

Based on plaintiff's complaint and brief, her intentional infliction of emotional distress claim seems to be based on retaliation by defendants. However, the IHRA defines "retaliation" as a civil rights violation. 775 ILCS 5/6–101(A). Given that the underlying facts therefore appear to be "inextricably linked" as in the case of *Maksimovic*, plaintiff's state claim for intentional infliction of emotional distress is dismissed.

### CONCLUSION

In conclusion, defendant State of Illinois' motion to dismiss is granted. The McHenry defendants' motion to cite additional authority in support of their motion to dismiss is granted. The McHenry defendants' motion to dismiss is granted in part and denied in part. Counts I and III are dismissed without prejudice to their refiling after proceedings in front of the EEOC.

**IT IS HEREBY ORDERED.**