Anita GARCIA, Plaintiff,

v.

Rita FRY (in her official capacity as County of Cook Public Defender), County of Cook, Patrick Gleason, and Alvin Hill, Defendants.

No. 96 C 5516.

United States District Court, N.D. Illinois, Eastern Division.

July 15, 1997.

Lewis Rosenbloom, McDermott, Will & Emery, Chicago, IL, Anita D. Garcia, pro se, Gregory Alan McConnell, American Bar Assoc., Chicago, IL, for Plaintiff.

John Justin Murphy, State's Atty. of Cook County, Chicago, IL, Anne L. Asulin, Cook County State's Atty., Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Anita Garcia, was employed by the Public Defender of Cook County ("Public Defender"). Ms. Garcia sued the

Public Defender through its head official, Rita Fry,[1] Cook County, and her superiors, Patrick Gleason and Alvin Hill, for retaliation in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and for intentional infliction of emotional distress. The defendants moved to dismiss. For the following reasons, the motion is granted, in part, and denied, in part.

### Count I—Title VII

*Statute of Limitations*

▪ A Title VII plaintiff has 300 days from the allegedly illegal act to file her Equal Employment Opportunity Commission ("EEOC") charge. 42 U.S.C. § 2000e-5(e)(1); *Lever v. Northwestern Univ.*, 979 F.2d 552, 553 (7th Cir.1992). Ms. Garcia filed her EEOC charge on October 31, 1995. In Count I, relying on the complaint allegations in paragraphs 1 through 38, the plaintiff charges that she was retaliated against because she assisted co-workers in asserting their Title VII rights. (Am.Compl.¶¶ 39, 40.) The defendants contend that Count I is time-barred to the extent that it alleges incidents which took place more than 300 days prior to Ms. Garcia's filing of her EEOC charge, i.e., before January 4, 1995. The defendants point to paragraphs 21 through 27 and 35.

In paragraphs 21 through 27, Ms. Garcia explains that prior to and in 1993, her supervisor, Mr. Hill, sexually harassed several Public Defender employees and an office intern. At the request of these persons, the plaintiff confronted Mr. Hill, communicated with office managers about his conduct, and participated in an internal Public Defender investigation of Mr. Hill's treatment of the intern. Ms. Garcia says that after the intern left in December 1993, with the help and approval of his supervisor, Mr. Gleason, Mr. Hill initiated a campaign of retaliatory harassment against her. (*Id.* ¶ 28.) The plaintiff then describes the allegedly retaliatory conduct. (*Id.* ¶¶ 29–32, 34, 35, 37.) Clearly, then, the events of 1993 and earlier do not comprise the retaliatory conduct about which Ms. Garcia complains, but are alleged to trigger retaliation. Therefore, the events set forth in paragraphs 21 through 27 need not fall within the 300–day statute of limitations.

▪ However, the conduct alleged to constitute retaliation—paragraphs 29 through 32, 34, 35, and 37—must either have occurred before the statute ran or the plaintiff must successfully invoke a doctrine excusing failure to comply with the statute. *Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1166–1167 (7th Cir.1996) ("standard principles of limitations law, notably the discovery doctrine and the doctrines of equitable estoppel and equitable tolling ... apply to cases brought under Title VII").[2] Paragraphs 29 through 32 refer to numerous episodes yet are devoid of dates. The defendants ask for these dates, pursuant to Fed. R.Civ.P. 12(e). In a footnote in her response brief, Ms. Garcia promises to furnish the dates. If she has not done so as of the date of this opinion, she is to do so as soon as possible. Although Ms. Garcia could have "pleaded [her]self out of court" by alleging pre-January 4, 1995 retaliatory conduct, her failure to plead specific dates is not a basis for dismissal.[3] *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 718–19 (7th Cir.1993) ("The statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint."); *Broxton v. City of Chicago,*

---

1. Ms. Garcia agrees with the defendants' contention that the Public Defender cannot be sued. Accordingly, Ms. Fry, in her official capacity as the Public Defender, is dismissed from this suit.

2. Ms. Garcia invokes the "continuing violation" theory. *See Galloway*, 78 F.3d at 1167 ("case law on continuing violations under Title VII is that the plaintiff may not base her ... suit on conduct that occurred outside the statute of limitations unless it would have been unreasonable to expect the plaintiff to sue before the statute ran").

3. Therefore, the substantive discussion of the applicability of the doctrines which toll the Title VII statute of limitations is for another day.

In paragraph 35, Ms. Garcia alleges that, since September 1994, she has requested transfers but her requests have been denied. The plaintiff has not pleaded herself out of court because the illegal act which triggers the statute of limitations is the denial of transfer, not the request. Here, the denial dates are unavailable and Ms. Garcia must provide them. However, to the extent that the denials occurred prior to the filing of the EEOC charge, October 31, 1995, they do not satisfy the exhaustion of administrative remedies requirement. *See infra.*

No. 96 C 2488, 1996 WL 627622, at *4 (N.D.Ill. Oct.25, 1996) (denying motion to dismiss Title VII claims in absence of facts showing that claims are untimely).

*Exhaustion of Administrative Remedies*

Prior to filing a Title VII suit, a plaintiff must exhaust her administrative remedies with the EEOC. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 128–29 (7th Cir. 1989). A corollary of this exhaustion requirement is that generally, a plaintiff cannot base her complaint on claims she did not include in her EEOC charge. Nevertheless, since most EEOC charges, including Ms. Garcia's, are completed by laypersons without the assistance of attorneys, "a Title VII plaintiff need not allege each and every fact that ... form[s] the basis of ... her complaint." *Cheek v. Western & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir.1994). What the courts do require, however, is that the claims in the complaint be "[1] like or reasonably related to the allegations of the [EEOC] charge and [2] growing out of such allegations." *Id.* (quotation omitted). "This limitation is consistent with the principle of primary jurisdiction in the [EEOC], for it gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir.1992) (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985)). The courts construe this limitation with "utmost liberality." *Id.* at 1111 (quotation omitted). The defendants argue that Count I must be dismissed to the extent that the alleged retaliatory conduct is not encompassed within the plaintiff's EEOC charge.

■ In her EEOC charge, Ms. Garcia wrote as follows:

I. I was hired by the above named Respondent in May, 1990. My most recent position is as Sentencing Advocate. In November, 1993 I assisted in a sexual harassment investigation against my supervisor. Since that time I have been subjected to discipline.

II. The reason given for the discipline was that I was insubordinate.

III. I believe that I am being retaliated against for assisting in a sexual harassment investigation in violation of Title VII of the Civil Rights Act of 1964, as amended, in that I am being subjected to disciplinary memos, disciplined on October 5, 1995, and I received a poor performance appraisal.

*See Babrocky,* 773 F.2d at 864–66 (looking to factual narrative of EEOC charge to determine what claims were raised before agency). Paragraph 34 of Ms. Garcia's complaint states that her 1995 performance review indicated that she met or failed to meet expectations and that she was insubordinate. Clearly, this claim is alleged in the EEOC charge.

■ In paragraph 30, Ms. Garcia alleges that Messrs. Hill and Gleason subjected her to arbitrary and groundless disciplinary actions. Subparagraphs (b), (c), and (d) detail instances where Ms. Garcia was actually disciplined, subparagraphs (f) and (g) describe instances where she was threatened with disciplinary action, and subparagraph (e) states that Messrs. Hill and Gleason failed to comply with the Public Defender's disciplinary procedure. All these allegations are "like or reasonably related to" the plaintiff's EEOC allegations that she was "subjected to discipline." Ms. Garcia's "detailed [complaint] allegations simply define" what she means by being subjected to discipline. *Zorn v. Helene Curtis, Inc.*, 903 F.Supp. 1226, 1242 (N.D.Ill.1995) (where EEOC charge asserted that employer " 'embarked on a systematic campaign of harassment'," numerous instances of sexual harassment set forth in the complaint "are reasonably related to and grow out of th[e EEOC] charge[, because they] ... simply define what [the plaintiff] claims was a systematic campaign of harassment").

"The second part of the test[—that the claims in the complaint reasonably grow out of an EEOC investigation—]is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation."[4] *Cheek,*

4. In this case, the EEOC conducted an investigation of Ms. Garcia's charge and, from the Right-to-Sue letter the plaintiff attached to her complaint, it appears that the EEOC addressed only Ms. Garcia's performance appraisal and the

31 F.3d at 500. Nevertheless, here, it would be reasonable for the EEOC to examine any disciplinary actions taken with respect to Ms. Garcia. *See Nolan v. South Cent. Community Servs., Inc.*, No. 95 C 2328, 1996 WL 473662, at *5–6 (N.D.Ill. Aug.14, 1996) (where plaintiff left employer after filing EEOC charge in which he alleged retaliation, complaint properly included constructive discharge claim because that issue "certainly would have come up in the conciliation process"). In addition, the policy which underlies the requirement that the Title VII complaint allegations be "like or reasonably related to" the plaintiff's EEOC allegations and grow out of such allegations supports the above conclusion. Cook County is aware of its Public Defender's disciplinary policies and procedures and, upon receiving an EEOC charge claiming that Ms. Garcia was retaliated against by being subjected to discipline, Cook County was put on notice that it had to review any disciplinary actions taken with respect to Ms. Garcia. Therefore, Cook County was in a position to resolve the dispute through the EEOC conciliation process. *See Rush*, 966 F.2d at 1110.

██ In subparagraph 30(a), Ms. Garcia states that Mr. Hill demoted her from the position of Lead Sentencing Advocate without incident or explanation. Although this allegation appears under the heading "arbitrary and groundless disciplinary action," the plaintiff's characterization of the conduct as a disciplinary action does not necessarily make it so. The EEOC charge does not refer to a demotion. However, it does state that Ms. Garcia received a poor performance appraisal. The demotion allegation can be said to be "like or reasonably related to" the appraisal allegation. In *Rush*, the plaintiff supplemented her EEOC charge with an affidavit which alleged that her employer's promotion-

al policies were discriminatory. *Id.* at 1110–11. The plaintiff's complaint contained, among other things, a claim that she was discriminatorily denied a promotion and employee benefits. *Id.* at 1108. The district court held that the denial of the promotion claim was "preserved." *Id.* at 1111. Disagreeing with the district court, the Seventh Circuit held that the denial of benefits claim was properly asserted because it was "derivative of the denial of promotion" claim. *Id.* "The plaintiff's theory regarding benefits [was] that she could have obtained these additional benefits only by being a full-time employee," i.e., by receiving a promotion. *Id.* Here, there may be a relationship between Ms. Garcia's demotion and her poor performance appraisal.[5]

██ In paragraph 31, Ms. Garcia complains that Mr. Hill disparaged her skills and abilities to and in front of the Public Defender's employees and addressed her in a harsh, insulting, and demeaning manner. This allegation does not satisfy the first prong of the test because it is not "like or reasonably related to" the plaintiff's EEOC allegations. The *Rush* plaintiff's EEOC charge asserted race-based termination- and promotion-related charges. *Id.* at 1110–11. The Seventh Circuit held that a claim of racial harassment was not related to the EEOC charge allegations and could not, therefore, be asserted in a Title VII suit. *Id.* at 1111–12. In paragraph 31, without attaching that label, Ms. Garcia is stating a harassment claim.

██ In paragraph 29, Ms. Garcia lists instances in which Messrs. Hill and Gleason disparately implemented the Public Defender's policies with respect to her. In paragraph 32, the plaintiff claims that Mr. Hill improperly accessed and copied her computer files. These allegations are not "like or

counseling the plaintiff received for discourteous treatment of a co-worker. However, what charges the EEOC actually considers are irrelevant for the purposes of satisfying the exhaustion of administrative remedies requirement; what matters are the charges brought to the EEOC's attention. *Rush*, 966 F.2d at 1112.

5. The requirement that the claims in the complaint reasonably grow out of an EEOC investigation is satisfied here for the same reason it is satisfied with respect to the other subparagraphs of paragraph 30. *See supra.*

The defendants also argue that whether the EEOC charge and the complaint allegations concern the same time period is relevant to the determination as to whether the latter are "like or reasonably related to" the former. *Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir.1995) (citing *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir.1989)). Since the dates are, for the most part, unavailable, I cannot include this factor in the analysis.

reasonably related to" the plaintiff's EEOC allegations. The *Cheek* plaintiff alleged in her EEOC charge that one of her supervisors discriminated against her on the basis of gender by intimidating her and asking her to pay for her clients' insurance premiums, something that her male colleagues were not required to do. 31 F.3d at 500. In the complaint, the plaintiff stated that another supervisor discriminated against her on the basis of gender by transferring her, as well as other females sales representatives, to less lucrative sales routes. *Id.* at 500–01. The Seventh Circuit concluded that the transfer allegations were not "like or reasonably related to" the intimidation/insurance premiums allegations because "the type of conduct alleged to be discriminatory[ ] and the identity of the individuals involved" were different. *Id.* at 502. Like in *Cheek*, the conduct asserted in paragraphs 29 and 32 is different from and factually unrelated to that in Ms. Garcia's EEOC charge.[6] *See id.* at 501–02. "Retaliation" is a legal conclusion, and merely labeling conduct "retaliatory" does not bring the complaint allegations within the ambit of the EEOC charge. *Id.* at 501 ("Because an employer may discriminate on the basis of sex in numerous ways, a claim of sex discrimination in an EEOC charge and a claim of sex discrimination in a complaint are not alike or reasonably related just because they both assert forms of sex discrimination."); *see also Vitello v. Liturgy Training Publications*, 932 F.Supp. 1093, 1096, 1098–99 (N.D.Ill.1996) (where second EEOC charge alleged retaliation in the form of "suspension, harassment, and different terms and conditions of employment" because of filing first EEOC charge, complaint allegation that

plaintiff was retaliatorily demoted because he assisted co-worker in prosecuting EEOC claim was not "like or reasonably related to" EEOC charge because "retaliation by demotion . . . involves a different form of retaliation . . . than the retaliation alleged in the second EEOC charge").

■ In paragraph 35, Ms. Garcia states that from September 1994 to the present, she requested transfers from several managers at the Public Defender's office, but her requests were denied. This allegation is not "like or reasonably related to" those of the EEOC charge. Assuming that the EEOC charge implicitly refers to Messrs. Hill and Gleason, the allegations in paragraph 35 do not implicate them. Thus, like in *Cheek*, paragraph 35 neither "describe[s] the *same conduct* [as that in the EEOC charge, nor] . . . implicate[s] the *same individuals.*" *Id.* (emphasis in the original); *see also Harper*, 45 F.3d at 148 (where plaintiffs alleged in EEOC charge that they were discriminated against with respect to layoffs, complaint allegation regarding discrimination with respect to seniority lists was not "alike or reasonably related to" EEOC charge because "[t]he layoffs were not connected with the ordering of the seniority lists[, and different] . . . individuals [were] involved").

■ Notwithstanding the above analysis, Ms. Garcia's allegations in paragraphs 29, 31, 32, and 35 may be cognizable if the conduct occurred after she filed her EEOC charge. If the alleged retaliatory acts occur after the EEOC charge is filed, "only a single filing [i]s necessary to comply with the intent of Title VII" viz-a-viz the requirement to exhaust administrative remedies.[7] *McKenzie*

---

**6.** Ms. Garcia's EEOC charge is silent as to who subjected her to discipline and gave her a poor performance appraisal. Indeed, this is a point of difference between this case and *Cheek*, where the plaintiff identified one individual in her EEOC charge and then alleged the conduct of another in the complaint. The defendants argue that the EEOC charge implicitly refers to Mr. Hill, but not to Mr. Gleason, and that Mr. Gleason's conduct is, therefore, not "like or reasonably related to" the EEOC allegations. However, since the EEOC charge states only that Ms. Garcia was subjected to discipline and received a poor performance appraisal, without identifying the persons involved, the defendants' conclusion about Mr. Hill is based on their knowledge of the organizational structure of the Public Defender.

The complaint suggests that Mr. Hill had to clear his actions with Mr. Gleason. Assuming, as I must on this motion, that that is the decision-making process at the Public Defender, the defendants would be aware of it, just as they were aware that Mr. Hill was the source of the disciplinary actions and the performance appraisal.

**7.** However, acts of retaliation which took place prior to the filing of the EEOC charge must either have been alleged in the EEOC charge or there must exist "a reasonable relationship' between the allegations . . . found in the charge and the allegations of Ms. [Garcia's] complaint," *McKenzie*, 92 F.3d at 482–83, a test which the plaintiff fails with respect to paragraphs 29, 31, 32, and 35. *See supra.*

*v. Illinois Dept. of Transp.*, 92 F.3d 473, 482–83 (7th Cir.1996). As I have indicated previously, the allegations in paragraphs 29 through 32 and 35 do not include dates. I am lead to speculate that, at least, some of the conduct might have occurred after the plaintiff filed her EEOC charge. Ms. Garcia filed her EEOC charge on October 31, 1995. In May 1996, she went on a medical leave of absence. (Am.Compl.¶ 38.) In subparagraph 29(e), Ms. Garcia complains about being unable to gain access to her office during her leave of absence, while other similarly situated employees did have such access. It would appear that this incident occurred after Ms. Garcia filed her EEOC charge. As such, this allegation is properly included in the complaint. *McKenzie*, 92 F.3d at 482–83. The incident alleged in paragraph 37 is likewise cognizable in this suit because it occurred in January 1996. Since the requirement to exhaust administrative remedies is a non-jurisdictional condition precedent to filing a Title VII suit, *Harper*, 45 F.3d at 148, the absence of dates in the complaint is not grounds for dismissal. *See Adwan v. Columbus–Cuneo–Cabrini Med. Ctr.*, 635 F.Supp. 499, 500–01 (N.D.Ill.1986) (exhaustion requirement need only be averred generally in complaint); *see also Babrocky*, 773 F.2d at 864 (proper place to attack exhaustion of administrative remedies requirement is summary judgment motion).

In conclusion, allegations in paragraphs 21 through 27 are properly in the complaint as providing context for the retaliatory conduct. Allegations in paragraphs 29(e), 34, and 37 are cognizable. Allegations in paragraph 30 satisfy the exhaustion of administrative remedies requirement, but must fall within the 300–day statute of limitations or be excused from is operation.[8] Incidents alleged in paragraphs 29,[9] 31, 32, and 35 are cognizable only if they occurred after the filing of the EEOC charge, October 31, 1995; otherwise, even if they comply with or are excused from the operation of the statute of limitations, they do not meet the exhaustion of administrative remedies requirement. *See Luddington v. Indiana Bell Tel. Co.*, 796 F.Supp. 1550, 1565 (S.D.Ind.1990), aff'd, 966 F.2d 225 (7th Cir.1992) ("doctrine of 'like or reasonably related [to]' . . . has nothing to do with the statute of limitations"). Ms. Garcia must provide the relevant dates to the defendants and the court.

### Count II—Intentional Infliction of Emotional Distress

The defendants argue that I lack subject matter jurisdiction over Count II pursuant to the Illinois Human Rights Act ("IHRA"). 775 ILCS 5/1–101 *et seq.* (West 1993 & Supp.1997). The IHRA provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act."[10] 775 ILCS 5/8–111(C) (West Supp.1997). Retaliation "against a person because . . . she has opposed that which . . . she reasonably and in good faith believes to be . . . sexual harassment" is a "civil rights violation" under the IHRA. 775 ILCS 5/6–101(A) (West 1993).

In *Geise v. Phoenix Co. of Chicago*, 159 Ill.2d 507, 639 N.E.2d 1273, 203 Ill.Dec. 454 (1994), the plaintiff alleged that her supervisor sexually harassed her. *Id.*, 639 N.E.2d at 1274, 203 Ill.Dec. at 455. She further alleged that her employer was liable for negligently hiring and retaining the supervisor, a known sexual harasser. *Id.* at 1274–75, 203 Ill.Dec. at 455–56. The Illinois Supreme Court held that, pursuant to the IHRA, the trial court had no jurisdiction over the plaintiff's claims of negligent hiring and negligent retention because

> the concept of sexual harassment is inextricably linked to the [negligent hiring and negligent retention] claims.... Absent the allegations of sexual harassment, [the plaintiff] would have no independent basis for imposing liability on her former employer under the facts present here. [The tort claims against the employer] depend

8. Obviously, the statute of limitations is not at issue if the incidents in this paragraph occurred after the filing of the EEOC charge, October 31, 1995.

9. With the exception of subparagraph 29(e). *See supra.*

10. If an Illinois state court lacks jurisdiction, so does a federal district court sitting in Illinois. *Guy v. Illinois*, 958 F.Supp. 1300, 1312 (N.D.Ill. 1997).

on the prohibitions against sexual harassment for their viability. *Id.* at 1277, 203 Ill.Dec. at 458. Numerous cases in this district have interpreted this language as instructing a court "to examine the plaintiff's tort claim and assess whether there is any viable claim remaining once all references to the civil rights claims are removed." *Russo v. Kap Graphics,* No. 96 C 2500, 1997 WL 17804, at *4 (N.D.Ill. Jan.14, 1997). If not, "the tort claim is barred by the [Illinois Human Rights] Act." [11] *Id.*

In *Guy,* the plaintiff alleged that she was discriminated against because of gender and was sexually harassed. She also alleged that she was fired in retaliation for complaining about the discrimination and the harassment. 958 F.Supp. at 1304. Having reviewed the facts of the intentional infliction of emotional distress claim, the court found that it was "based on retaliation by defendants." *Id.* at 1312. The court therefore dismissed the claim, holding that it was preempted by the IHRA. *Id.* The present case is analogous because, for the purposes of Count II, Ms. Garcia realleges the facts which support Count I. (Am.Compl.¶ 46). She also states that Messrs. Gleason's and Hill's retaliatory conduct was extreme, outrageous, "intentional, malicious, and in reckless disregard of the high degree of probability that [Ms.] Garcia would suffer extreme emotional distress," (*id.* ¶¶ 48, 50), and that she suffered severe distress as a result of the retaliation. (*Id.* at 51.) Thus, after the allegations referring to

a civil rights violation, i.e., retaliation, are removed, nothing is left of Ms. Garcia's intentional infliction of emotional distress claim. *Russo,* 1997 WL 17804, at *4. This "claim is therefore barred by [the IHRA] and *Geise.*" *Id.* Accordingly, I have no jurisdiction over Count II and dismiss it.[12]

### Conclusion

The defendants' motion to dismiss is granted, in part, and denied, in part. Ms. Fry, in her official capacity as the Public Defender, is dismissed. Count II is dismissed. Messrs. Hill and Gleason are dismissed. Ms. Garcia is to provide the dates pertaining to paragraphs 29 through 32 and 35.

---

11. *Geise* generated two lines of cases in this district. *Torretto v. I.B. Diffusion, L.P.,* No. 92 C 2758, 1996 WL 563540, at *2–3 (N.D.Ill. Sept.30, 1996). The defendants rely on the line exemplified by *Schwitzenberg v. Lifeline, Ltd.,* No. 94 C 5123, 1994 WL 684984 (N.D.Ill. Dec. 6, 1994) (Aspen, J.), the first case to interpret *Geise. Russo, supra,* and *Guy, infra,* are in that line. Ms. Garcia, on the other hand, relies on the line exemplified by *Compton v. Chinn Enters., Inc.* 936 F.Supp. 480 (N.D.Ill.1996). The cases in the former line vastly outnumber those in the latter. Judge Holderman, the author of one of the opinions upon which *Compton* relies, *Tolson v. HHL Fin. Servs., Inc.,* No. 94 C 5136, 1995 WL 461883 (N.D.Ill. Aug. 3, 1995), has reversed his position "[u]pon serious reconsideration and review of the analysis of numerous other courts from this district." *Russo,* 1997 WL 17804, at *4 n. 1. I find the analysis in the *Schwitzenberg* line to be more persuasive. *See Torretto,* 1996 WL 563540, at *2–3; *Janopoulos v. Harvey L.*

*Walner & Assocs.,* No. 93 C 5176, 1996 WL 131754, at *2 (N.D.Ill. Mar.15, 1996). Finally, a recent decision of an Illinois appellate court, the first Illinois reported case since *Geise,* adopted the reasoning of *Schwitzenberg* and its progeny. *Maksimovic v. Tsogalis,* 282 Ill.App.3d 576, 668 N.E.2d 166, 218 Ill.Dec. 3 (1996), *appeal granted,* 168 Ill.2d 596, 671 N.E.2d 733, 219 Ill.Dec. 566 (1996). Although my interpretation of Illinois law is controlled only by precedent set by the Illinois Supreme Court, appellate court cases are useful. *Kaplan v. Pavalon & Gifford,* 12 F.3d 87, 89 (7th Cir.1993).

12. Since only Count I remains, I dismiss Messrs. Hill and Gleason from the suit *sua sponte.* "Title VII does not impose 'employer' liability on a supervisor in his individual capacity for acts which violate the state." *Williams v. Banning,* 72 F.3d 552, 555 (7th Cir.1995) (affirming dismissal pursuant to Fed.R.Civ.P. 12(b)(6)).