**Robert LIVAS, Plaintiff-Appellant,**

v.

**Edward PETKA, Defendant-Appellee.**

**No. 82–1629.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 1983.

Decided July 7, 1983.

Rehearing Denied Aug. 5, 1983.

Patrick T. Murphy, Chicago, Ill., for plaintiff-appellant.

William W. Kurnick, Judge, Kurnick & Knight, Park Ridge, Ill., for defendant-appellee.

Before BAUER, WOOD and ESCH-BACH, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff-appellant Robert Livas (Livas) brought this action under 42 U.S.C. § 1983 alleging that Defendant-appellee Edward Petka (Petka) dismissed him from his position as Assistant State's Attorney of Will County for political reasons and that the dismissal therefore violated Livas' constitutional rights. After a bench trial, the district court entered judgment for the defendant, holding Livas had failed to establish that his dismissal was politically moti-

vated. Our jurisdiction is based on 28 U.S.C. § 1291. We affirm.

## I

Livas, a member of the Illinois bar, began employment as an Assistant State's Attorney of Will County in 1977. He served in that capacity until December 2, 1980; on that date Defendant Petka, the State's Attorney of Will County, dismissed Livas on the grounds that Livas was a divisive force within the office whose presence was causing a deterioration in the working relationship among the Assistants.

Livas contends that the proffered explanation for his dismissal is subterfuge. He alleges that Petka dismissed him for political reasons, particularly Livas' failure to support Petka's successful bid for re-election in November of 1980. Livas further alleges that Petka prevented him from obtaining a position as an Assistant Public Defender subsequent to his dismissal. Thus, Livas brought this action under 42 U.S.C. § 1983 to challenge his termination.[1]

## II

On appeal from the district court's entry of judgment for the defendant, Livas challenges that court's findings of fact as clearly erroneous. Livas urges us to set aside the district court's finding that he was a disruptive force in the State's Attorney's office, and substitute a finding that his dismissal was politically motivated. This we decline to do.

We are mindful that the testimony as to Livas' office demeanor, and his effect on the office atmosphere, was conflicting; indeed, this lends credence to the description of an office divided into two "armed camps." Despite Livas' assertions to the contrary, however, the record provides ample support for the district court's finding that Livas was a disruptive force and that Petka dismissed him for that reason.

It was the province of the district judge to assess the credibility of the witnesses. FED.R.CIV.P. 52(a). That he chose to believe those who testified in support of Petka is not our concern, nor is it, despite Livas' claims to the contrary, reason to set aside the resultant findings of fact.

## III

The district court, having found that Livas was terminated because of his office demeanor, concluded that even if political considerations had played some role in motivating the discharge Livas would not be entitled to relief. We agree, although on somewhat different grounds.

The district court based its conclusion on an application of the tests set forth in *Wren v. Jones,* 635 F.2d 1277 (7th Cir.1980). In *Wren* two alternative tests were articulated for determining whether relief is warranted in a case where political association is not the sole basis for discharge.[2] The district court determined that Livas was not enti-

---

1. Livas sought to bring this action on behalf of all employees of the Will County State's Attorney's Office. Livas alleged that class relief would be appropriate because Petka had requested that all his employees assist with his re-election campaign. The district court did not certify the cause as a class action; Livas now contends that this was error. We reject Livas' claim. Our affirmance of the judgment for defendant renders the class certification question moot. *See Indianapolis School Comm'rs v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975). Moreover, we harbor serious doubts over whether Livas could have been an appropriate class representative in any event.

2. In *Wren,* a group of former state employees, all Republican, brought suit contending they

had been discharged for political reasons in violation of their constitutional rights. 635 F.2d 1277 (7th Cir.1980). The court upheld the dismissals. First, applying the test of *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), the court found that political affiliation was not a motivating factor in the dismissals. *Wren,* 635 F.2d at 1286. As an alternative ground for its decision, the court applied the balancing test of *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Under the balancing analysis, the court found that the state's fiscal concerns outweighed any alleged infringement of the plaintiffs' right to political association. *Wren,* 635 F.2d at 1287.

tled to relief under either test; Livas had not demonstrated that political considerations were the motivating factor in his dismissal, *see Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), and Petka's interest in office harmony and efficiency outweighed any alleged infringement of Livas' first amendment rights, *see Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

Although we agree with the conclusions drawn by the district court under the *Mt. Healthy* and *Pickering* tests, we do not believe the application of these tests was warranted under the facts of this case. The threshold inquiry in this case should have been whether Livas had stated a cause of action viewing the allegations of his complaint in the light most favorable to him. And this, we believe, he did not do.

Even if we assume that Petka dismissed Livas for political reasons, Livas would not be entitled to relief. The seminal case in the area of politically motivated dismissal of public employees is *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Under *Elrod,* the general rule is that the dismissal of public employees for reasons of political patronage violates the first amendment. *Accord Newcomb v. Brennan,* 558 F.2d 825 (7th Cir.1977); *Illinois State Union Council 34 v. Lewis,* 473 F.2d 561 (7th Cir.1972). This general rule admits of an exception, however, in the case of public employees who occupy policy-making or confidential positions. *Elrod v. Burns,* 427 U.S. at 367–72, 96 S.Ct. at 2686–89.

■ The "policy-making or confidential position" exception of *Elrod* was revamped by the Supreme Court in *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The *Branti* Court recognized that the pivotal inquiry is not whether a position is confidential or policy-making in character, but rather "whether the hiring authority can demonstrate that [political considerations are] an appropriate requirement for the effective performance of the public office involved." *Id.* at 518, 100 S.Ct. at 1295. Applying this new articulation of the *Elrod* exception, the *Branti* Court held that continued employment of an assistant public defender could not be conditioned upon particular political allegiances. The Court noted that a public defender owes a duty not to the public at large, but to a particular criminal defendant.[3] Thus, "whatever policy-making occurs in the public defender's office must relate to the needs of individual clients and not to any partisan political interests." *Branti v. Finkel,* 445 U.S. at 519, 100 S.Ct. at 1295.

■ We are confronted here with the antithetical question of whether political considerations can be an appropriate requirement for the effective performance of a public prosecutor's duties.[4] We believe the answer to this question is clearly "yes."

A public prosecutor, such as State's Attorney Petka, exercises broad public responsibilities in the performance of his duties. A prosecutor's "client" is not an individual, but society as a whole. And the prosecutor has the broad discretion to set whatever policies he or she believes necessary to protect the interests of that society.

---

**3.** The Supreme Court described the duties of a public defender as follows:

"[T]he primary office performed by appointed counsel parallels the office of privately retained counsel. Although it is true that appointed counsel serves pursuant to statutory authorization and in furtherance of the federal interest in insuring effective representation of criminal defendants, his duty is not to the public at large, except in that general way. His principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effec-

tive performance of his responsibility is the ability to act independently of the government and to oppose it in adversary litigation."
*Branti v. Finkel,* 445 U.S. 507, 519, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980) (quoting *Ferri v. Ackerman,* 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979)).

**4.** The *Branti* Court admitted that the official duties of a public prosecutor presented a distinct question, but declined to address it. 445 U.S. at 519 n. 13, 100 S.Ct. at 1295 n. 13.

One of the problems faced by a prosecutor such as Petka, however, is that his policies are implemented by subordinates. Indeed, an Assistant State's Attorney may, in carrying out his or her duties, make some decisions that will actually create policy. *Cf. Newcomb v. Brennan,* 558 F.2d 825, 830 (7th Cir.1977) (upholding politically motivated dismissal of a deputy city attorney). The public interest in the efficient administration of justice requires that decisions made by such assistant prosecutors conform with the broad objectives chosen by the prosecutor.

For this reason, Petka was entitled to demand absolute loyalty from his assistants, including Livas. That Petka lost confidence in Livas, for whatever reason, is therefore sufficient justification for Livas' dismissal. *See Newcomb v. Brennan,* 558 F.2d 825, 830 (7th Cir.1977).

## IV

Livas also sought relief on the ground that Petka had effectively prevented him from obtaining employment as an Assistant Public Defender. On appeal, Livas contends that the district court erred by its failure to rule explicitly on this claim.

■ The district court expressly found that Petka had taken no action to prevent Livas from engaging in the practice of law, and that finding is supported by the record in this case. Moreover, any statements made by Petka with respect to Livas' potential employment with the Public Defender were in the nature of qualified privileged statements from a past employer to a prospective employer. As such, these statements cannot afford a basis for the relief sought by Livas. Accordingly, we find Livas' arguments in this regard to be without merit.

## V

We affirm the finding of the district court that Livas' dismissal was not predicated on political considerations. Moreover, we note that even a politically motivated dismissal would not have afforded a basis for the relief Livas sought. Livas' other arguments have proved equally unavailing. Accordingly, the order of the district court entering judgment for Defendant Petka is

AFFIRMED.