**Peggy Lynn BIBBS, Plaintiff,**

v.

**Scott C. NEWMAN, individually and in his capacity as Prosecuting Attorney for the 19th Judicial Circuit, Office of the Prosecuting Attorney for the 19th Judicial Circuit of Indiana, Defendants.**

No. IP 95–1490–C H/G.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Feb. 27, 1998.

Stephen Laudig, Laudig & George, Indianapolis, IN, for Plaintiff.

Donald W. Rupprecht, McHale Cook & Welch, Indianapolis, IN, for Defendants.

Wayne E. Uhl, Office of the Indiana Attorney General, Indianapolis, IN, for amicus curiae State of Indiana.

## ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND RELATED MOTIONS

HAMILTON, District Judge.

This civil rights case presents several questions of law about the employment of deputy prosecuting attorneys in Indiana. As explained below, the court concludes that when an Indiana prosecuting attorney makes employment decisions concerning deputy prosecuting attorneys, the prosecuting attorney acts as a state official for purposes of the Eleventh Amendment to the United States Constitution and 42 U.S.C. § 1983. The court also concludes as a matter of law that a deputy prosecuting attorney is a confidential and/or policy-making employee who is excluded from the First Amendment's protection against politically motivated hiring or firing and, consequently, is also excluded from the definition of a protected "employee" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f). Finally, the court concludes that the First Amendment does not prohibit the prosecuting attorney from firing a deputy prosecuting attorney for public criticism of the Office of the Prosecuting Attorney. Defendants therefore are entitled to summary judgment on the claims over which the court may exercise subject matter jurisdiction.

Plaintiff Peggy Lynn Bibbs was a deputy prosecuting attorney employed by the Office of the Prosecuting Attorney for the 19th Judicial Circuit of Indiana from February 3, 1992, through January 18, 1995. The 19th

Judicial Circuit consists of Marion County, Indiana, so the office is more commonly known as the "Marion County Prosecutor's Office." Bibbs was hired by former prosecutor Jeffrey Modisett and fired by current prosecutor Scott C. Newman, who is a defendant in this case in both his individual and official capacities. During Modisett's tenure as prosecutor, Bibbs spoke out publicly and privately about her unhappiness with some of the duties she had been assigned and about an alleged disparity in salaries between male and female prosecutors. Newman then replaced Modisett as prosecutor and, within three weeks of taking office, fired Bibbs.

Bibbs filed this action asserting six different causes of action. Count I alleges sex discrimination in employment in violation of Title VII of the Civil Rights Act of 1964. Count II alleges discrimination in violation of the Americans with Disabilities Act. Count III seeks relief under 42 U.S.C. § 1983 for alleged violation of Bibbs' First Amendment rights in being fired for publicly criticizing the prosecutor's office and for filing complaints with the EEOC. Count IV alleges unspecified violations of the due process clause and has been dismissed. Counts V and VI allege violations of the Indiana Constitution. Defendants have moved for summary judgment on all claims that have not been dismissed previously. Before addressing that motion, the court must first address several other matters: plaintiff's withdrawal of her claim under the Americans with Disabilities Act; the status of Indiana prosecuting attorneys under the Eleventh Amendment; and defendants' motion to strike portions of plaintiff's evidence in opposition to summary judgment.

## I. *Plaintiff's Motion to Withdraw the ADA Claim*

After defendants moved for summary judgment, Bibbs moved to withdraw Count II, her claim under the Americans with Disabilities Act. The motion raises a technical procedural problem that is easy to resolve. Bibbs did not invoke a particular rule in her motion. Defendants ask the court to treat the motion under Fed.R.Civ.P. 41(a)(2) and to dismiss the claim with prejudice. Rule 41(a)(2) governs a plaintiff's attempt to dismiss an entire "action," not a single claim from an action. A motion to dismiss voluntarily a single claim in a multi-count complaint is more properly treated as an amendment to the original complaint under Fed. R.Civ.P. 15(a). See *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1392 (9th Cir.1988); *Gronholz v. Sears, Roebuck and Co.,* 836 F.2d 515, 517–18 (Fed.Cir.1987); *Management Investors v. United Mine Workers,* 610 F.2d 384, 393–94 & n. 22 (6th Cir.1979); see also 9 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2362 at 31 (Supp.1997) ("Rule 41(a) applies only to the dismissal of all claims in an action. A plaintiff who wishes to drop some claims but not others should do so by amending his complaint pursuant to Rule 15.").

Rule 15(a) provides that after a responsive pleading has been served a "party may amend the party's pleading only by leave of court, or by written consent of the adverse party; and leave shall be freely given when justice so requires." Although the language of Rule 15(a) does not speak of imposing conditions on a party's ability to amend a complaint, "[t]he statement in Rule 15(a) that 'leave shall be freely given when justice so requires' presupposes that the court may use its discretion to impose conditions on the allowance of a proposed amendment as an appropriate means of balancing the interests of the party seeking the amendment and those of the party objecting to it." 6 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1486 at 605 (1990). Because Bibbs did not move to withdraw her ADA claim until after defendants moved for summary judgment, it would not be fair at this point to leave open even a remote possibility that defendants might face this claim in some other forum. Accordingly, plaintiff's complaint will be deemed amended to delete Count II on the condition that Count II is dismissed with prejudice.

## II. *Indiana Prosecuting Attorneys and the Eleventh Amendment*

Earlier in this case the defendants moved to dismiss all claims. The court determined that Bibbs' statutory employment discrimina-

tion claims in Counts I and II could proceed against defendant Newman in his official capacity only. The court dismissed Counts I and II against Newman in his individual capacity. Bibbs' First Amendment claim in Count III could proceed against Newman in his individual capacity for damages and against Newman in his official capacity for injunctive relief. The court dismissed Bibbs' federal due process claim in Count IV in its entirety and dismissed Counts V and VI, Bibbs' Indiana constitutional claims, to the extent they sought damages. Based on the briefing at that time, however, the court left open the questions whether Bibbs' First Amendment claim for damages in Count III could proceed against Newman in his official capacity and whether Bibbs' claims for injunctive relief in Counts V and VI could proceed against Newman in his official capacity. Both of those questions depend on whether the prosecuting attorney is considered, for purposes of 42 U.S.C. § 1983 and the Eleventh Amendment to the United States Constitution, to be a state official when making decisions about employees in the office. If Newman acted as a state official when he fired Bibbs, then, under *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), Newman is not a "person" suable under § 1983 to the extent that Bibbs seeks money damages on her First Amendment claim. Similarly, under *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Eleventh Amendment forbids federal courts from exercising subject matter jurisdiction over claims for injunctive relief against state officials based on state law.[1]

In ruling on the defendants' motion to dismiss, the court invited the parties to seek the views of the Office of the Attorney General of Indiana, which frequently deals with Eleventh Amendment issues. The Attorney General has submitted a helpful *amicus curiae* brief on the subject.

■ A prosecuting attorney in Indiana clearly acts as a state official when prosecut-

ing criminal cases. See *Study v. United States*, 782 F.Supp. 1293, 1297 (S.D.Ind. 1991); see also Ind. Const. art. 7, § 16 (creating office of prosecuting attorney in each circuit). In deciding Eleventh Amendment questions with respect to some government officials, however, courts must look more specifically at the office's particular function at issue in the case. See *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 1737, 138 L.Ed.2d 1 (1997) (whether sheriff acted as state or county official would not be decided in "categorical, 'all or nothing' manner," but would depend on function at issue in the particular case). Whether an official acts as a state official for purposes of the Eleventh Amendment is a matter of federal law, but state law plays a critical role in the analysis. See *Regents of University of California v. Doe*, 519 U.S. 425, 117 S.Ct. 900, 904, 137 L.Ed.2d 55 (1997). The court's "understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law." *McMillian*, 520 U.S. at ——, 117 S.Ct. at 1737. For example, after a detailed review of Alabama law in *McMillian*, the Supreme Court held that an Alabama sheriff was a state policy-maker when acting in his law enforcement capacity. In addition, the "question whether a money judgment against a state instrumentality or official would be enforceable against the State is of considerable importance to any evaluation of the relationship between the State and the entity or individual being sued" under the Eleventh Amendment. *Regents of the University of California*, 519 U.S. 425, 117 S.Ct. 900, 904, 137 L.Ed.2d 55 (1997), citing *Hess v. Port Authority Trans–Hudson Corp.*, 513 U.S. 30, 45–51, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994).

As the Attorney General observes in his brief, the law in this area draws some fine distinctions. In *Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir.1992), the court held that an Illinois sheriff acted as a state officer when executing a state court's writ to evict occupants of a building. In *Ruehman v. Sheah-*

---

**1.** The tests for whether Newman was acting as a state official for Eleventh Amendment purposes and for § 1983 purposes are identical.

*an*, 34 F.3d 525 (7th Cir.1994), however, the court held that an Illinois sheriff acted as a county officer when designing and implementing a computer system that tracked state court arrest warrants. The Seventh Circuit distinguished the two cases on the grounds that the sheriff in *Ruehman* was not required by the state to implement the computer tracking system, whereas the sheriff in *Scott* was being sued for following a direct order from the state court. *Ruehman*, 34 F.3d at 528–29.[2]

Whether a prosecuting attorney in Indiana acts as a state official when making employment decisions requires close analysis of several aspects of state law. There are no bright line tests here. The prosecuting attorney in Indiana is a "constitutional office, carved out of the office of the attorney general as it existed at common law." *State ex rel. Neeriemer v. Daviess Circuit Court*, 236 Ind. 624, 629, 142 N.E.2d 626, 628 (Ind.1957) (footnote omitted), citing *State ex rel. Young v. Niblack*, 229 Ind. 596, 99 N.E.2d 839 (1951), *State ex rel. Williams v. Ellis*, 184 Ind. 307, 112 N.E. 98 (Ind.1916). The Indiana Constitution provides:

> There shall be elected in each judicial circuit by the voters thereof a prosecuting attorney, who shall have been admitted to the practice of law in this State before his election, who shall hold his office for four years, and whose term of office shall begin on the first day of January next succeeding his election. . . .

Ind. Const. art. 7, § 16. The prosecuting attorney is responsible for prosecuting within his or her jurisdiction virtually all criminal prosecutions on behalf of the state. Ind. Code § 33–14–1–4. The prosecuting attorney is elected by the voters of the judicial circuit that he or she serves.[3] The state both sets and pays the minimum salaries for the prosecuting attorney and one chief deputy. Ind.Code §§ 33–14–7–1 to 21. State law requires county councils, however, to appropriate for "other deputy prosecuting attorneys, investigators, clerical assistance, witness fees, out-of-state travel, postage, telephone tolls and telegraph, repairs to equipment, office supplies, other operating expenses, and equipment an amount as may be necessary for the proper discharge of the duties imposed by law upon the office of the prosecuting attorney of each judicial circuit." Ind. Code § 33–14–7–2(g). That statute gives a county council discretion in determining the amount "necessary for the proper discharge of the duties," but a state court may issue a writ of mandamus to require appropriations if a county council fails to comply with this duty. See *Brown v. State ex rel. Brune*, 172 Ind.App. 31, 359 N.E.2d 608, 609–10 (1977) (reversing writ of mandamus where county council exercised reasonable discretion in setting appropriations).

---

**2.** The Seventh Circuit has recognized but not yet decided a similar issue involving Illinois prosecutors. In *Hernandez v. O'Malley*, 98 F.3d 293, 297 (7th Cir.1996), the court noted that if the plaintiff had been suing the defendant Illinois State's Attorney exclusively in his official capacity, "we would need to decide whether, when making employment decisions, a State's Attorney in Illinois is part of the state or of the county that elects him and sets his budget." This determination turns upon interpretation of Illinois law. Other circuits have drawn similar distinctions based on state law in deciding whether prosecutors were subject to suit under § 1983 or were protected by Eleventh Amendment immunity. See, *e.g.*, *Coleman v. Kaye*, 87 F.3d 1491, 1499–1506 (3d Cir.1996) (for § 1983 purposes, New Jersey county prosecutor made policy for county when refusing to promote investigator); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 535–36 (2d Cir.1993) (New York county district attorney is state policy-maker when deciding when or whom to prosecute, but is a municipal policy-maker under § 1983 on administrative matters such as office policy and training of employees); *Gobel v. Maricopa County*, 867 F.2d 1201, 1206–09 (9th Cir.1989) (plaintiff might be able to prove for § 1983 purposes that Arizona county attorney, a position described in the state constitution as "office of the county," was a county policy-maker when holding "roundup" of bad check offenders); *Crane v. State of Texas*, 766 F.2d 193, 194–95 (5th Cir.1985) (order on rehearing) (Texas district attorney is a county policy-maker and not protected by the Eleventh Amendment in case alleging county policy of issuing misdemeanor capias without judicial finding of probable cause).

**3.** The Indiana General Assembly sets the boundaries for judicial circuits. Ind. Const. art 7, § 7. Most circuits now consist of only one county, but the Fifth and the Seventh circuits each consist of two. Ind.Code §§ 33–4–1–15, –58 (Seventh Judicial Circuit, Dearborn and Ohio Counties), and Ind.Code §§ 33–4–1–39, –78 (Fifth Judicial Circuit, Jefferson and Switzerland Counties).

A prosecuting attorney who is sued in a civil action arising out of his or her official duties is entitled to representation by the Attorney General of Indiana or by private counsel hired by the state court administrator. Ind.Code § 33–2.1–9–1. With exceptions not relevant here, state law requires the state to pay the "expenses" incurred by a prosecuting attorney for a threatened, pending, or completed civil action that arises from the prosecuting attorney's performance of official duties. Ind.Code § 33–14–11–4. Most important, these "expenses" specifically cover judgments and settlements in cases against prosecuting attorneys. Ind.Code § 33–14–11–1 (definition of "expenses"). The statute draws no distinction between, for example, lawsuits based on prosecution of a criminal case and lawsuits based on decisions about hiring, firing, or disciplining office personnel.[4]

The relationship between a prosecuting attorney and a deputy prosecuting attorney also is governed by Indiana law. A prosecuting attorney is authorized to appoint deputy prosecuting attorneys. Ind.Code § 33–14–7–2. Under Indiana law the relationship is presumed to be an appointment at the will of the appointing authority, and there is no evidence here tending to show that the prosecutor's power to terminate the appointment at any time and for any reason has been limited by law. Also, a deputy prosecuting attorney is authorized under Indiana law to perform the duties of the prosecuting attorney. See Ind.Code § 1–1–4–1(5) ("When a statute requires an act to be done which, by law, an agent or deputy as well may do as the principal, the requisition is satisfied by the performance of the act by an authorized agent or deputy."); Ind.Code §§ 33–14–1–3, –4, 33–14–2–1 through 5–4; *Hill v. State,* 212 Ind. 692, 11 N.E.2d 141, 143–44 (1937) (deputy prosecuting attorney was vested with power to act for principal).

Therefore, when an Indiana prosecuting attorney makes decisions about hiring and firing deputy prosecuting attorneys, the weight of Indiana law tends to show that the prosecuting attorney does not act as a county official. The strongest argument in favor of treating the prosecuting attorney as a county official would be based on the county's funding of most deputy prosecuting attorneys and other office staff. That fact alone, however, is not enough to make the prosecuting attorney a county officer. See *McMillian v. Monroe County,* 520 U.S. at ——, 117 S.Ct. at 1740 (county sheriff carrying out his law enforcement duties is a state policy-maker, in part, because "county's payment of sheriff's salary does not translate into control over him"). In Indiana, a prosecuting attorney does not exercise county power and does not answer to county authorities except for seeking "necessary" funds to operate the office. Weighing against the limited significance of the county appropriations for office operations are the prosecuting attorney's role as a state official under the state constitution, as well as the significant fact that any judgment in a lawsuit against a prosecutor would be paid by the State of Indiana. The decision to hire or fire a deputy prosecuting attorney is more of a state action than a county action.

■ Although it is clear that a prosecuting attorney in Indiana does not act as a county official in this situation, it might be possible to argue that the prosecuting attorney holds neither a state nor a county office, but acts as a "circuit official" for the relevant judicial circuit. A political subdivision cannot invoke a state's sovereign immunity under the Eleventh Amendment. A political subdivision, however, maintains a status independent of the state and generally has the power to levy taxes, pay judgments, and issue bonds. See *Moor v. Alameda County,* 411 U.S. 693, 717–21, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), and *Mt. Healthy City School District Board of*

---

4. The Attorney General argues that an equitable award of backpay to an employee of a prosecuting attorney could be assessed against a county because Ind.Code § 33–14–7–2(g) requires county councils to pay the costs of operating the prosecutor's office, including the salaries of most deputies. Atty. Gen. Br. at 10 n. 6. The Attorney General has not explained, however, how this conclusion might be reconciled with Ind.Code § 33–14–11–4, which requires the state to pay any judgment in a case against a prosecuting attorney arising from the discharge of official duties (with exceptions only for criminal convictions and attorney disciplinary proceedings). The court expresses no view on the question.

*Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). A judicial circuit in Indiana has none of these attributes. Plaintiff therefore cannot avoid the Eleventh Amendment problem here by treating the prosecutor as a "circuit" official.[5]

For these reasons, the court holds that a prosecuting attorney in Indiana acts as an officer of the state when hiring and firing deputy prosecuting attorneys. In his official capacity only, defendant Newman is entitled to share in Indiana's sovereign immunity under the Eleventh Amendment and is not a "person" subject to a suit for damages under § 1983. Count III of plaintiff's complaint therefore must be dismissed for lack of subject matter jurisdiction to the extent that it seeks damages from defendant Newman in his official capacity. Plaintiff's state constitutional claims in Counts V and VI must also be dismissed for lack of subject matter jurisdiction.

### III. *Defendants' Motion to Strike*

Defendants have moved to strike parts of the affidavit of Carolyn W. Rader, which plaintiff submitted in opposition to the motion for summary judgment. Rader is an attorney who works as a contract public defender for the Marion County Public Defender Agency. Defendants seek to strike paragraphs 10, 12, 14, 15, 18, 19, 20, 21, 22, and 23 from Rader's affidavit on the grounds that they contain conclusory allegations and that Rader lacks sufficient personal knowledge of the prosecutor's office. Most of the challenged paragraphs address Rader's personal experience with deputy prosecuting attorneys in plea negotiations. This information appears to be within her personal knowledge.

■ The court will strike paragraph 19 of the Rader affidavit, which states: "It has not been my observation and experience that courtroom deputy prosecutors are effective policy-makers for any broad classes of matters relating to the disposition of criminal cases." This statement is too broad and conclusory to create a genuine issue of material fact. See *Drake v. Minnesota Mining & Manufacturing Co.,* 134 F.3d 878, ——, 1998 WL 18036, at *7–8 (7th Cir. 1998) (affidavit should contain factual specifics based on affiant's personal knowledge that support any conclusory allegations). For the same reason, the court will strike paragraph 23, which states "Courtroom deputy prosecuting attorneys do not appear to have any opportunity to influence or define policy for the Prosecutors office [sic]."

■ Defendants also have moved to strike paragraphs 16 and 22 as inadmissible hearsay. Paragraph 16 states: "Since the current elected Prosecutor has been in office courtroom deputies, on more than one occasion, have stated to me that they have no authority whatsoever to vary from their office's policy of having a criminal defendant plead to the 'lead charge' in a criminal case." Rule 801(d)(2)(D) of the Federal Rules of Evidence provides that statements made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" are admissible even though they are hearsay. Rader's failure to identify specific deputies risks rejection of the proffered evidence. See *Davis v. Mobil Oil Exploration & Producing, Southeast, Inc.,* 864 F.2d 1171, 1173–74 & n. 1 (5th Cir.1989) (admitting hearsay statement of unnamed declarant of defendant where witness provided sufficient basis for concluding declarant was agent of defendant speaking within scope of agency); cf. *Belton v. Washington Metropolitan Area Transit Authority,* 20 F.3d 1197, 1202 (D.C.Cir.1994) (if witness could not identify statement as coming from defendant's employee as opposed to other witnesses of bus accident, Rule 801(d)(2)(D) would not apply). Nevertheless, Rader's affidavit asserts that the statements came from deputy prosecutors, and the subject matter of the statements is sufficient to show they

---

**5.** Compare *State ex rel. McClure v. Marion Superior Court,* 239 Ind. 472, 158 N.E.2d 264, 268–69 (1959) (clerk of circuit court is office of the judicial circuit, not the county), and *Parsons v. Bourff,* 739 F.Supp. 1266, 1267 (S.D.Ind.1989) (McKinney, J.) (clerk is a state official and not subject to § 1983 suit in his official capacity), with *Winters v. Mowery,* 884 F.Supp. 321 (S.D.Ind.1995) (Barker, J.) (overruling prior decision and holding that clerk of judicial circuit in Marion County is not a state official where county would pay any judgment against the clerk).

would have been made within the scope of the deputies' employment. The court therefore denies defendants' motion to strike paragraph 16. The same reasons require denial of the motion to strike paragraph 22. Accordingly, the court grants the defendants' motion to strike paragraphs 19 and 23 of the Rader affidavit but denies the motion to strike as to all other paragraphs.

## IV. Defendants' Motion for Summary Judgment

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Defendants, as moving parties, must show there is no genuine issue on one or more essential elements of each claim against them. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A factual issue is material only if resolving the factual issue might affect the suit's outcome under the governing substantive law. *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir.1992).

To defeat the motion, plaintiff must come forward with evidence showing a genuine issue of fact as to each challenged essential element of her claims. An issue is genuine when the non-moving party comes forward with evidence sufficient to enable a jury to find in her favor on the issue. See *Celotex,* 477 U.S. at 324; *Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 512 (7th Cir.1996). When deciding a motion for summary judgment, the court views the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. As the non-moving party, the plaintiff is entitled to the benefit of favorable inferences from the evidence, so long as those inferences are reasonable. *Jones v. Merchants National Bank & Trust Co.,* 42 F.3d 1054, 1057 (7th Cir.1994).

### A. The Undisputed Facts

In light of the foregoing standard, the following facts are undisputed or reflect the evidence in the light reasonably most favorable to plaintiff. Plaintiff Peggy Lynn Bibbs began working for the Office of the Prosecuting Attorney for the 19th Judicial Circuit (also known as the Marion County Prosecutor's Office) on February 3, 1992, as a deputy prosecuting attorney. Former Prosecuting Attorney Jeffrey Modisett hired Bibbs and assigned her to the Juvenile Division. During her tenure, she was primarily responsible for prosecuting rape and child molestation cases in the Sex Crimes Division. She received several salary increases, promotions, and transfers. Bibbs apparently was unhappy with some of the cases she had been assigned. She sought to transfer to the General Felony Division. On August 9, 1994, Bibbs attempted to resign but was convinced to stay on. Bibbs took a brief leave of absence from the prosecutor's office from August 30, 1994, through September 2, 1994. Upon her return, she moved her office to the Municipal Screening Division, but it is unclear whether she was formally transferred to that division. Bibbs stated in her deposition that she was never assigned to Municipal Screening.

On September 26, 1994, a daily newspaper, *The Indianapolis Star,* published an article on salary differences between male and female deputy prosecuting attorneys in the prosecutor's office. Bibbs was the only female deputy prosecuting attorney quoted by name. The front-page article quoted Bibbs as saying "Equal pay for equal work is fundamental and needs to be rectified as soon as possible." Pl.Ex. 2. The article also stated:

Bibbs, a felony prosecutor, is credited with two years of experience even though she's been a lawyer for 10 years, most of that time as an army prosecutor.

Her $35,000–a–year salary is higher than the average pay for a two-year prosecutor, but is about $7,500 less than others with 10 years of experience.

A review of data supplied by the prosecutor's office found three other female prosecutors who, like Bibbs, weren't given full credit for past experience.

On November 8, 1994, Newman defeated Modisett and was elected prosecuting attorney. On November 15, 1994, Bibbs filed a discrimination charge against the prosecutor's office with the federal Equal Employment Opportunity Commission (EEOC) and with the Indiana Civil Rights Commission (ICRC). Her complaint alleged discriminatory treatment based on wage and job discrimination between male and female deputy prosecutors, as well as retaliation for her complaints. On December 5, 1994, Bibbs filed another discrimination complaint with both offices alleging discriminatory treatment by the prosecutor's office based on gender, retaliation for filing the first complaint, and disability. ·

On January 1, 1995, Newman took office as prosecuting attorney. On January 18, 1995, Newman fired Bibbs. On January 19, 1995, Bibbs filed a third charge of discrimination with the EEOC and the ICRC alleging retaliation for her previous charges of discrimination based on her gender and disability. On October 10, 1995, pursuant to Indiana law, Bibbs received a written statement from Newman providing the reasons for her discharge. The letter to her lawyer stated:

This letter is written in response to your request made pursuant to *Indiana Code* 22–6–3–1 on behalf of Peggy L. Bibbs. Ms. Bibbs was employed as a Deputy Prosecutor by the Marion County Prosecutor's Office from February 3, 1992, to January 18, 1995.

As you are aware, Marion County deputy prosecuting attorneys are employees at will, as well as policy-makers, and are subject to discharge at any time without cause. While the law does not require me to have cause, Ms. Bibbs was discharged for several reasons including her poor judgment skills, inconsistent performance, unprofessional conduct and inappropriate behavior. Due to these factors, I lost confidence in her ability to perform her job in a professional and competent manner.

Pl.Ex. 9. Bibbs filed this lawsuit on November 6, 1995. The remaining claims at this point are Bibbs' claim in Count I for sex discrimination under Title VII of the Civil Rights Act of 1964 and her claim in Count III that her firing violated her First Amendment rights by punishing her for speaking out on an issue of public concern.

### B. *Title VII Claim*

■ Bibbs' Title VII claim founders on a threshold issue: whether she was an "employee" within the scope of Title VII protection. Title VII excludes from its protections certain public officials:

The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate supervisor with respect to the exercise of Constitutional or legal powers of the office. The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency, or political subdivision....

42 U.S.C. § 2000e(f). There is no evidence here that Bibbs was covered by any civil service laws that might neutralize the statutory exception.

The test for determining whether someone is an exempt "employee" under 42 U.S.C. § 2000e(f) is the same test for determining whether an employee is exempt from the Supreme Court's prohibitions on politically motivated firing and hiring first announced in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). See *Americanos v. Carter,* 74 F.3d 138, 144 (7th Cir.1996) (deputy attorney general in Indiana is exempt employee under Title VII), citing *Heck v. City of Freeport,* 985 F.2d 305, 310 (7th Cir.1993) (applying identical provision under Age Discrimination in Employment Act). In *Elrod v. Burns,* the Court held that political patronage firings of low-level public employees could violate their First Amendment rights, but the controlling concurring opinion of Justice Stewart made clear that the holding was limited to "nonpolicymaking, nonconfidential·

employees." 427 U.S. at 375 (Stewart, J., concurring). In *Branti v. Finkel*, the Supreme Court explained *Elrod* and rephrased the issue as "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." 445 U.S. at 518. The Court held in *Branti* that an assistant public defender could not be fired for political reasons, but it relied heavily on a public defender's responsibilities to her clients, as distinct from the broader public responsibilities of officials such as prosecutors. *Id.* at 519 & n. 13 (declining to express opinion on position of deputy prosecutor).

In a context very similar to this case—deputy attorneys general—the Seventh Circuit described the relevant test for the *Elrod/Branti* doctrine and 42 U.S.C. § 2000e(f) as "whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation." *Americanos*, 74 F.3d at 141, quoting *Heideman v. Wirsing*, 7 F.3d 659, 663 (7th Cir.1993); see also *Kline v. Hughes*, 131 F.3d 708, 709–10 (7th Cir.1997); *Guy v. State of Illinois*, 958 F.Supp. 1300, 1305 (N.D.Ill.1997) (granting defendants' motion to dismiss and applying *Americanos* to find that assistant state's attorney in Illinois is not a covered employee under Title VII). The court is required to "examine the 'powers inherent in a given office,' rather than the actual functions" that a particular occupant of the office performed. *Americanos*, 74 F.3d at 141, quoting *Heck v. City of Freeport*, 985 F.2d at 309, which in turn quoted *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir.1985).

The most relevant Seventh Circuit decisions for this case are *Americanos* and *Livas v. Petka*, 711 F.2d 798 (7th Cir.1983). In *Americanos*, a white male Republican deputy attorney general was asked to resign by the new Democratic Attorney General of the State of Indiana shortly after she took office. The reason allegedly given was that he "did not meet the goals of the new Attorney General." 74 F.3d at 139. The deputy attorney

general sued the Attorney General and others for discrimination based on national origin, race, sex, and age, and for violation of his First Amendment right to freedom of association. The district court dismissed the suit under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The Seventh Circuit affirmed, holding as a matter of law that the position of deputy attorney general is a position where party affiliation could appropriately be considered. 74 F.3d at 142. For the same reasons, the court held as a matter of law that the deputy attorney general was not an "employee" protected under Title VII or the ADEA. *Id.* at 144.

In *Livas v. Petka*, an assistant state's attorney in Illinois claimed that he had been fired based on his political affiliation. The district court tried the case and found that the plaintiff had not been fired for political reasons. The Seventh Circuit affirmed but explained that even if the plaintiff had been fired for political reasons, he would not have been entitled to relief. 711 F.2d at 800–01. The court explained that the elected prosecutor "was entitled to demand absolute loyalty from his assistants," and if he lost confidence in an assistant "for whatever reason," that loss of confidence was sufficient to justify firing the assistant. *Id.* at 801.

■ Bibbs argues that her case is different from *Americanos* because the duties of a deputy prosecuting attorney are not statutorily prescribed as are the duties of a deputy attorney general. According to Bibbs, the court must closely examine the actual operation of her position, and she relies most heavily on her evidence tending to show that a deputy prosecutor does not have the authority to enter into a final plea agreement. See Rader Aff. ¶ 13. Bibbs also argues that the only difference between her position as a courtroom deputy prosecuting attorney and a paralegal is that Indiana law requires the State to be represented by an attorney. Pl. Br. at 12.

■ Bibbs' arguments are not persuasive and her evidence does not create a genuine issue of material fact as to whether she was a protected employee under Title VII. First, a deputy's inability to make a plea bargain without a supervisor's approval does nothing

to undermine the deputy's policy-making status. A policy-making official need not operate without supervision to fall outside the protections of the First Amendment patronage hiring/firing doctrines or Title VII. Rader's affidavit does not create a genuine issue of material fact on this issue.

■ Second, *Americanos* reinforced the well-established principle that the court must examine the powers inherent in a given office, not the actual functions that a particular occupant of the office might have performed. *Id.* at 141, citing *Heck,* 985 F.2d at 309. Bibbs' attempt to equate her position to that of a paralegal is utterly without merit. A deputy prosecuting attorney is a professional who acts and speaks for the elected prosecuting attorney in court and in dealing with opposing counsel and the public. The job of a courtroom attorney necessarily requires constant decision-making and by definition involves the exercise of a great deal of professional discretion. Each decision made by a deputy prosecuting attorney may promote or undermine the policies and stature of the elected prosecuting attorney. Also, deputy prosecuting attorneys are authorized by law to perform most of the official duties of the prosecuting attorney. See Ind.Code § 1–1–4–1(5); Ind.Code §§ 33–14–1–3, –4, and 33–14–2–1 to 5–4; *Hill v. State,* 11 N.E.2d at 143–44; Massa Aff. ¶ 7.

The Seventh Circuit recognized in both *Americanos* and *Livas* that an elected lawyer for the government is entitled to demand loyalty from his or her deputy attorneys and, absent any specific civil service protections, may fire them simply for loss of confidence in their judgment. And in both cases, the Seventh Circuit decided the issue as a matter of law. See *Americanos,* 74 F.3d at 143 (affirming dismissal under Fed.R.Civ.P. 12(b)(6)); *Livas,* 711 F.2d at 800–01 (affirming defense verdict after trial but stating district court could have dismissed under Rule 12(b)(6)). As a deputy prosecuting attorney, Bibbs was "an appointee on the policy making level" under 42 U.S.C. § 2000e(f) and was not an "employee" for purposes of Title VII. Defendants are entitled to judgment as a matter of law on Bibbs' Title VII claims.

### C. *First Amendment Claims*

Bibbs also contends that Newman violated her First Amendment rights by discharging her because of her statements to *The Indianapolis Star* and her complaints to the EEOC and the ICRC. The court analyzes Bibbs' First Amendment claims under the Supreme Court's *Connick/Pickering* doctrine. Bibbs has a cause of action against her public employer for retaliation based on the exercise of her First Amendment rights if she can prove:

(1) Bibbs' speech addresses a matter of public concern. *Cliff v. Board of School Comm'rs of the City of Indianapolis,* 42 F.3d 403, 409 (7th Cir. 1994), citing *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983);

(2) Bibbs' "interest in her expression 'must not be outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of public services it performs through its employees,'" *Id.,* quoting *Pickering v. Board of Ed. of Township High Sch. Dist.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); and

(3) Bibbs' speech was a substantial or motivating factor in her discharge. *Board of County Comm'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996).

Whether speech is a "matter of public concern" is a question of law for the court. *Cliff,* 42 F.3d at 409. If Bibbs can show that protected speech was a motivating factor in her discharge, defendants may avoid liability by showing that she would have been discharged even in the absence of protected conduct. *Board of County Comm'rs v. Umbehr,* 116 S.Ct. at 2347, citing *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. at 287.

The threshold question for the court is whether Bibbs' speech was a matter of public concern. The "content, form, and context" of an employee's statement should be evaluated on the record as a whole to determine wheth-

er the speech is a matter of public concern. *Connick v. Myers,* 461 U.S. at 147. Seventh Circuit decisions show that content is the most important factor of the three, and that the employee's motive in making the statement is also a relevant factor. *Cliff,* 42 F.3d at 409. The "fact that an employee speaks at least in part for personal reasons will not automatically deprive her statements of the protections afforded to speech on a matter of public concern." *Id.* at 410 (citations omitted).

■ Defendants argue that Bibbs' filing of her EEOC and ICRC complaints and her discussions with *The Indianapolis Star* were not matters of public concern because they were limited to a personal dispute that Bibbs had with her employer over salary and personnel issues. Although sex discrimination is a matter of public concern, Bibbs' filing of charges with the EEOC and ICRC addressed her own personnel problems with the prosecutor's office regarding her salary, her alleged disability, and retaliation. Such complaints are private matters and relate solely to Bibbs' personnel problems. See *Johnson v. University of Wisconsin–Eau Claire,* 70 F.3d 469, 482 (7th Cir.1995) (affirming summary judgment; plaintiff's complaints of sexual harassment and lack of an increase in salary were meant to end that harassment and raise her wages and therefore did not raise a matter of public concern).

■ Bibbs' statements to *The Indianapolis Star,* however, are certainly a matter of public concern. While it is undisputed that Bibbs was unhappy with her salary at the prosecutor's office, her statements to the newspaper addressed a matter of public concern that extended beyond that personal dispute. She made the statements publicly to the primary daily newspaper in Marion County, and the fact that Bibbs spoke out publicly supports her contention that her speech was a matter of public concern. Cf. *Wales v. Board of Educ. of Community Unit School Dist. 300,* 120 F.3d 82, 84 (7th Cir. 1997) ("an employee's decision to deliver the message in private supports an inference that the real concern is the employment relation"). In addition, the "fact that an employee speaks at least in part for personal

reasons will not automatically deprive her statements of the protections afforded to speech on a matter of public concern." *Cliff,* 42 F.3d at 410. Even though Bibbs may have made the statements to further her own cause in the prosecutor's office, and even though a small part of the article addressed her case specifically, Bibbs' public complaints of sex discrimination in an elected official's office were matters of public concern at the core of the First Amendment.

■ That does not mean, however, that the First Amendment entitled Bibbs to keep her job after this public attack on her elected employer. The decisive question here is whether Bibbs' interest in making the statement to the newspaper outweighs the interest of the prosecutor's office in "promoting the efficiency of its public services." *Gregorich v. Lund,* 54 F.3d 410, 414 (7th Cir.1995). The Seventh Circuit recognizes a number of factors that are relevant in weighing these competing interests, including "(1) whether the statement would create problems in maintaining discipline by immediate supervisors or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her daily responsibilities; (4) the time, place, and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public." *Jefferson v. Ambroz,* 90 F.3d 1291, 1297 (7th Cir.1996) (applying the *Connick/Pickering* analysis), quoting *Caruso v. De Luca,* 81 F.3d 666, 670 (7th Cir. 1996). The First Amendment does not give public employees an unqualified license to launch public attacks on their bosses without fear of any consequences. This balancing test, however, is "necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of the employee's speech." *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987). The employer "bears the burden

of justifying the discharge; [but] its burden varies depending on the nature of the employee's expression." *Caruso,* 81 F.3d at 671, citing *Connick,* 461 U.S. at 150.

There is a very close relationship between the *Elrod/Branti* line of cases that governs whether Bibbs is an employee under Title VII and the *Connick/Pickering* line of cases that governs Bibbs' First Amendment claims. That relationship has been explained and debated in opinions by Judge Flaum and Judge Ripple in two recent Seventh Circuit decisions. See *Caruso v. De Luca,* 81 F.3d at 669–70 (majority opinion of Ripple, J.) (applying *Connick/Pickering* analysis where elected official fired deputy who had run against her); *id.* at 671–73 (Flaum, J., concurring in the judgment) (applying *Elrod/Branti* analysis); *Heideman v. Wirsing,* 7 F.3d 659, 661–62 (7th Cir.1993) (majority opinion of Flaum, J.) (applying *Elrod/Branti* analysis where sheriff fired deputy who had publicly criticized him just before election); *id.* at 664–65 (Ripple, J., concurring in the judgment) (applying *Connick/Pickering* analysis). The *Elrod/Branti* line of cases is a "particular subset of the wider category of discharges based on the First Amendment" governed by the *Connick/Pickering* standards. *Caruso v. De Luca,* 81 F.3d at 669, quoting *Heideman v. Wirsing,* 7 F.3d at 662. Both lines of cases attempt to reconcile a public employee's "individual right of expression and the need of government to function effectively." *Caruso,* 81 F.3d at 670 n. 3. In *Caruso* and *Heideman,* Judges Flaum and Ripple debated whether the dismissal of an employee who had publicly opposed election of the elected official (and, in *Caruso,* had been the opposing candidate) should be analyzed as a patronage case or a free speech case. As Judge Flaum pointed out in his concurring opinion in *Caruso,* however, in the great majority of cases, "the two analyses will undoubtedly yield identical results." 81 F.3d at 673. This case is in that "great majority," so this court need not try to sort out all the subtleties of that debate. In this case the court applies the *Connick/Pickering* analysis because Bibbs has alleged retaliation for her public criticism of the prosecutor's office.

Under the *Connick/Pickering* analysis, the role of the employee in the office is a critical factor, especially when the employment relationship is one in which "personal loyalty and confidence are necessary." *Caruso v. De Luca,* 81 F.3d at 670; see also *Rankin,* 483 U.S. at 390 ("The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails."). Here that factor is the decisive factor. The same reasons that a deputy prosecuting attorney is a policy-making and confidential position unprotected from political patronage hiring and firing are critical to this analysis under *Connick* and *Pickering.* In deciding whether a position is a policy-making or confidential position under *Elrod* and *Branti,* courts consider the possibility that, if the position were held by a disloyal political opponent of the elected official, the opponent might be able to subvert and stymie the elected official's policies. Under *Connick* and *Pickering,* the issue is whether a public attack on the employer is so disruptive of working relationships that the employee may be fired or punished.

These two lines of cases may well fit together so that any employee in a confidential, policy-making job subject to political hiring and firing decisions may also be fired for publicly criticizing the elected official who employs her. Otherwise we would confront the odd situation in which the First Amendment would permit the elected official to fire the employee based on the feared *possibility* of political sabotage or guerilla tactics, but could prohibit the elected official from firing the employee *after an actual public attack* by that employee. To decide this case, however, this court need not state the conclusion so broadly. It is sufficient here to note only that the elected prosecuting attorney is entitled to have and to insist on full confidence in the judgment and loyalty of the deputy prosecuting attorneys who are essential in carrying out his policies and responsibilities. See *Americanos,* 74 F.3d at 143 (political loyalty of deputy attorneys general is "of the utmost importance" to the attorney general's confidence in them); *Livas v. Petka,* 711 F.2d at 801 (prosecutor was entitled to demand loyalty of assistants and could dismiss any assis-

**1188**

tant in whom he had lost confidence "for whatever reasons").

 The employment relationship between Newman and Bibbs therefore is one in which personal loyalty and confidence are necessary. Newman must have confidence in Bibbs' ability to follow his policies and to exercise her judgment in implementing those policies. While her statements to the press were not made under Newman's tenure, her actions could raise a legitimate concern that if Bibbs became unhappy with Newman's approach to the office, she would go to the press again rather than addressing the problem internally. This lack of trust directly affects the state's "interest in promoting the efficiency of public services," to use the language from the *Connick/Pickering* doctrine. Even though Bibbs addressed a matter of public concern in her criticism of the office, the need for trust and loyalty between the elected official and his or her deputies to ensure the effectiveness of the public office outweighs Bibbs' First Amendment interests to the extent she wanted to remain employed by the office she had attacked.

This last qualification should not be overlooked. At the risk of stating the obvious, we should not lose sight of the fact that, under all the First Amendment cases and balancing tests, a public employee remains free to criticize his or her employer publicly or privately. Resigning in protest as a matter of principle—loudly or quietly—is a long tradition in the public life of the United States. The issue in the cases, however, is the different question whether the public employee is also entitled to insist that the target of her public criticism continue to trust her to carry out the public's work for which the elected official is responsible. Because the court finds that the interests of the State and the prosecutor's office in maintaining effective operations outweigh Bibbs' First Amendment concerns, the court need not consider whether Bibbs' speech was a motivating factor in her discharge. Defendants are entitled to summary judgment on Count III of plaintiffs' lawsuit.

*Conclusion*

For the foregoing reasons, the defendants' motion for summary judgment is granted. The court will enter final judgment.

So ordered.